REID et al. v. TEXAS & NEW ORLEANS R. CO.

No. 12456.

Court of Civil Appeals of Texas. Galveston.
Nov. 20, 1952.

Rehearing Denied Jan. 15, 1953.

Howard J. Hendrix and Al L. Crystal, of Houston, for appellants.

Baker, Botts, Andrews & Parish and John F. Heard, of Houston, for appellee.

CODY, Justice.

This is an appeal from the action of the trial court, at the conclusion of plaintiffs' evidence, in directing a verdict and rendering judgment for defendant Railway Company. By agreement of the parties the suits which had been brought individually against the defendant Railway Company by plaintiffs, James D. Reid and John T. Kirtley Jr., were consolidated.

On October 8, 1944, about 3:50 a. m., the automobile which was being operated by plaintiff Reid and in which John T. Kirtley, Jr., was riding as a passenger ran into a tank car which was on a spur track of defendant that crossed the Wallisville Road at defendant's Englewood yards in Harris County. The tank car formed a part of a string of eight cars and at the time the tank car was run into it blocked the Wallisville Road.

The consolidated suit was one to recover individually for the damages sustained by the respective plaintiffs as the result of the alleged negligence of the defendant Railway Company in various specified acts and omissions.

The basis upon which plaintiffs predicated their suit for damages was that the defendant Railway Company knew or, by the exercise of ordinary care, should have known that the railroad crossing in question was one which was more than an ordinarily dangerous nighttime crossing and which for that reason required more than ordinary precautions to give warning of the danger incident to crossing same.

This appeal is predicated upon 8 points, the first 7 of which complain of the court's action in excluding the testimony of 7 different witnesses tendered for the purpose of undertaking to prove the allegations that the defendant Railway Company knew, or, by the exercise of ordinary care, should have known that the crossing was more than an ordinarily dangerous nighttime crossing. The eighth point was to the effect that the court erred in granting the Railway Company's motion for a directed verdict because the pleadings and evidence presented fact issues to go to the jury.

The substance of the plaintiffs' material allegations were as follows:

That defendant's main line tracks run in an easterly and westerly direction paralleling the Wallisville Road and from said main line tracks a spur or connecting track or tracks branched off in a southerly direction crossing the Wallisville Road at approximately the 5800 block at right angles. That the Wallisville Road at the crossing is a black-top public street or road, which then and for a long time prior thereto carried a large volume of motor traffic. That at the crossing the grade is approximately level and that at all material times the crossing was used day and night by multiplied thousands of people and is in a thickly settled neighborhood bordering in and around the incorporated city limits of Houston, and is one of the two main thoroughfares on the north side of the city leading to many and extremely large war industries in, on and near the Houston ship channel. That the main-line-crossing was about three blocks away, where defendant maintained signal lights, gates, bells and a watchman and other warning signals at all times. That said Wallisville Road begins at said main crossing and is fed by easterly bound traffic for many miles from the western and northern part of the city and large areas of numerous suburban additions coming in from and near said thoroughfares. That the crossing in question leads out of defendant's Englewood yards where a large creosoting plant is maintained. That said crossing is partly isolated, concealed and obscured from the view of the public in approaching same upon said Wallisville Road, more particularly from the east by various obstructions hiding the same from view. That the traffic and traveling public are confronted by a high fence for a distance of more than 3,000 feet, high weeds, and as said crossing is approached nearer there are several buildings, and a high boarded fence, and high stacks of lumber, timbers, cross-ties and material and high weeds. That on the south side of said road in approaching said crossing there are numerous houses and buildings, and within a few feet of said right of way there is a large cluster of trees with heavy massive foliage and high weeds which isolate, conceal and obscure trains, engines and cars from view of the traveling public upon said crossing in broad daylight as well as on dark nights and/or during heavy fogs during the nighttime. That such facts and conditions surrounding the crossing created a perilous situation of constant potential danger and was more than ordinarily dangerous and hazardous to the safety of the people using said crossing. All of which the defendant knew, or, by the exercise of ordinary care, should have known. That at the time and on the occasion in question there were no lights, bells, wigwags, signals or watchman maintained at said crossing by the defendant to warn people moving over said crossing of the presence of said railroad track or of the probability of trains using same. That such existing dangerous conditions were greatly aggravated and greatly intensified during heavy fogs on dark nights due to the fact defendant maintained an approximately 600 candle power light suspended about 20 feet over and above the area of said crossing, "which reflected blinding beam high above said fog causing a blinding glare to the traveling public so as to obscure said crossing, which reduced the distance of visibility five or six times less, as compared with the normal visibility where there were no blinding lights over the fog upon said Wallisville Road; that defendant knew of the dangerous condition created by the high light over the fog, and wholly failed to install

and maintain any lights near the ground, or install bells, wigwag signals or keep a watchman present at said crossing * * *."

Plaintiffs each alleged in substance that on the night in question plaintiff Reid, accompanied by plaintiff John T. Kirtley Jr. and by Jean Bowman (who is an appellant in a companion case pending here), was driving in a westerly direction on said Wallisville Road in a lawful and careful manner during a heavy fog, with the automobile under control to stop within the normal view of visibility. That immediately upon approaching said crossing he was without warning suddenly subjected to the blinding glare from said high strong light from above the fog, as aforesaid, which caused a dense smoky condition that enveloped said crossing which reduced the visibility to about 8 feet, "being many times less than the ordinary normal visibility, in which he had been driving as aforesaid for a long distance; that shortly prior to said occasion the Defendant * * * had run one of its freight trains out of said Englewood Yards over and upon said * * * railroad tracks, and had stopped the same and entirely blocked said crossing with freight and black tank cars so that traffic moving over said Wallisville Road could not cross said crossing * * *."

In particularizing, the plaintiffs alleged in substance as the actionable negligence which rendered defendant liable for plaintiffs' injuries the following, which may be condensed into the following:

(1) in permitting the train to stand on the crossing for an illegal or unreasonable length of time.

(2) failing to provide visual or audible signals to warn approaching vehicles of the presence of the tracks or cars.

(3) in maintaining a strong light which obscured the crossing without placing low lights near the ground.

We have concluded, after careful consideration, that the court did not commit reversible error in taking the case from the jury and rendering judgment for the defendant.

The facts offered in evidence stated most favorably from the standpoint of plaintiffs, as in law they must be because of the action of the trial court in directing the verdict against plaintiffs, were as follows:

The evidence shows that five spur tracks in all crossed Wallisville Road in the general area. The accident occurred at the second crossing, to one driving in a westerly direction. The second crossing was separated from the first crossing by about 200 feet. At each crossing there was an ordinary railroad crossing warning sign. There was over the first two crossings an amber light of 600 candle power. On the night in question the fog was so dense that at a distance of 50 feet from the rear of a car only its taillights could be seen.

The Wallisville Road was in a straight line for several hundred feet in each direction from the crossings in question, and at no place was there a difference in elevation of more than two feet.

The evidence showed that plaintiffs had been visiting a Mr. Kennedy's home, and that when they left, a Mr. King drove a car in front of the car in which plaintiffs rode for the purpose of guiding them, as the driver of the second car, plaintiff Reid had last been over the road in 1941, and since that time, the road had been paved with a black topping. The passengers riding with Mr. Reid consisted of plaintiff Kirtley, and Miss Bowman, who sat between Reid and Kirtley. Reid's car was following the lead car, driven by Mr. King, at between 18 and 20 miles, at which rate of speed they crossed the first crossing, over which there was a warning amber light, as stated above. The second crossing, over which there was also an amber light, was blocked by a dark tank car. There is no evidence as to how long the road had been so blocked. Mr. King stopped his car because, as he testified, he saw a red light off to the side which he took to be a light carried by a member of a train crew. Plaintiff Reid did not stop, though he slowed to about 15 miles an hour, as he pulled around Mr. King's automobile. Almost as he did so, he crashed into the tank car. He testified that, at the rate he was driving, he could have stopped within 3 or 4 feet. By this

he meant that he could have so stopped from the moment that his brakes were fully applied. The undisputed evidence showed that he never got his foot upon the brake before the collision.

The evidence tendered by plaintiffs to show that crossing was extrahazardous by reason of the brush, houses, and fence, which would obscure the view of a train approaching the crossing, was irrelevant, due to the fact that the road was here straight, and no hazard was created by reason of an approaching train of cars. The undisputed evidence also showed that, at the time in question, about 4:00 a. m., the traffic was very light, and that the cars driven by Mr. King and by plaintiff Reid were the only cars in sight on the road. Obviously, the crossing could not have been extrahazardous by reason of heavy traffic, which was nonexistent at the time. Without detailing the evidence which was excluded by the court, there was none from which it could have been inferred that the railroad company should have been on notice that the crossing was extrahazardous because the yellow light above glared and blinded drivers and contributed to the happening of an accident or near-accident. See City of Ft. Worth v. Lee, 143 Tex. 551, 186 S.W.2d 954, 159 A.L.R. 125; Texas & N. O. R. Co. v. Davis, Tex.Civ.App., 210 S.W.2d 195; Ft. Worth & Denver C. Ry. Co. v. Looney, Tex.Civ.App., 241 S.W.2d 322.

There was no duty on the railroad to blow a whistle or ring a bell to warn that the crossing was already blocked by a car. Texas & N. O. R. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 741, writ refused. See also Texas & N. O. R. Co. v. Compton, 135 Tex. 7, 136 S.W.2d 1113; Texas City Terminal Ry. Co. v. Allen, Tex.Civ.App., 181 S.W.2d 727, writ refused. Plaintiff's evidence that the yellow light in the fog cut off the view of the tank car did not create an illusion that the crossing was open and clear. There is no evidence here that the railroad had or was charged with notice of factors that made the amber light blinding in the fog. Texas & N. O. R. Co. v. Davis, supra.

The evidence shows that Reid was driving at such a rate of speed in the fog that his stopping distance was twice as far as his vision through the fog. See the Stratton case, supra; Texas & N. O. R. Co. v. Stewart, Tex.Civ.App., 248 S.W.2d 177. The evidence showed that Reid knew that a railroad crossing was in the vicinity, and admitted that "a yellow light means a crossing." The only conclusion that could be drawn from the evidence was that Reid was negligent as a matter of law, and that his negligence was the proximate cause of the accident. The evidence also showed that Kirtley was jointly in control of the car which was being driven by Reid. See Texas Mexican Ry. Co. v. Hoy, Tex.Com.App., 24 S.W.2d 18.

Without further discussion, we must affirm the judgment.