MISSOURI PACIFIC RAILROAD COMPANY, Petitioner,

v.

Lula COOPER et al., Respondents.

No. B–6735.

Supreme Court of Texas.

Feb. 22, 1978.

Rehearing Denied March 22, 1978.

---

Jackson, Walker, Winstead, Cantwell & Miller, John L. Lancaster, III and C. Steven Matlock, Jr., Dallas, for petitioner.

Ernest L. Sample, Beaumont, for respondents.

POPE, Justice.

This is a wrongful death action arising from a collision between the Cooper passenger car and a Missouri Pacific freight train. Wilfred Cooper and his wife, Evina, died as a result of the accident and Sheronell, their daughter, was injured. The plaintiffs are the parents of the two decedents and the legal representatives of the two minor children. The trial court rendered judgment in favor of the minor children on a jury verdict in the amount of $71,000, and the court of civil appeals affirmed the judgment. 547 S.W.2d 723. Missouri Pacific urges by this appeal that there is no evidence to support the jury finding that the crossing was extra hazardous, and that the trial court erred in admitting testimony of prior accidents and also evidence that the crossing had a local reputation for being extra hazardous. We reverse the judgments of the courts below because of the improper evidence admitted upon the trial and render judgment that plaintiffs take nothing.

The Cooper family was traveling in an easterly direction along Farm Road 413 at about 5:00 A.M. on February 2, 1969. The road was lightly traveled. The family reached a point about nine miles east of Rosebud where they crossed the Brazos River. Without changing directions they drove about 800 feet farther east to a point where a single Missouri Pacific railroad track intersected the road at right angles. The Cooper vehicle ran into the side of a freight train that was crossing the road and moving to the south. The train consisted of 113 cars and a caboose and was pulled by four engines. The tracks were the Missouri Pacific's main line from Fort Worth to Houston. There was a light beam on the front engine which at the time of the accident was already about three fourths of a mile south of the crossing, and there was a light on the caboose. There were no other lights between the front and back of the train. The train was moving at a speed of about forty-five miles an hour.

The Cooper automobile ran into the 110th freight car, killing Evina Cooper instantly. Wilfred Cooper died a week later without ever regaining consciousness. A two-week-old infant sustained a broken arm, and a six-year-old daughter was unharmed. Both Mr. and Mrs. Cooper were thrown out of the car, which was itself totally demolished.

The weather at the time of the collision was foggy and damp. The evidence varied as to whether it was a light fog or "a lot of fog" on the morning of the accident. The rural setting of the accident was described by the witnesses as flat for at least a mile in all directions. There were no houses or lights in the vicinity and the crossing was outside of any towns. The railroad tracks were on a level with the road. One driving from the west to the east would drive over a hill about one mile west of the crossing and would have three kinds of warning signals before reaching the crossing. A large "X" with an "R" on each side was painted on the surface of the paved two-lane highway about 400 feet west of the crossing. To the right of that painting just off the shoulder of the road was the usual yellow round metal sign that also had an "X" with an "R" on either side. Near the tracks and just off the shoulder on the right side of the road there was the familiar cross buck sign with two crossing boards erected on a white pole. The word "Railroad" was written in black on one of the boards and the word "Crossing" was on the other. A similar sign faced the opposite direction on the other side of the tracks. An additional

warning of danger to those proceeding toward the railroad crossing was the presence of railroad cars that were already occupying the crossing and directly in front of the driver. *Texas & N. O. R. R. Co. v. Compton,* 135 Tex. 7, 136 S.W.2d 1113 (1940); *Texas City Terminal Ry. Co. v. Allen,* 181 S.W.2d 727 (Tex.Civ.App.—Galveston 1944, writ ref'd); *Texas & N. O. R. R. Co. v. Stratton,* 74 S.W.2d 741 (Tex.Civ.App.—San Antonio 1934, writ ref'd); *Missouri-Kansas-Texas R. R. Co. v. Bernhardt,* 418 S.W.2d 368 (Tex.Civ.App.—Austin 1967, writ ref'd n. r. e.); *Missouri-Kansas-Texas R. R. Co. v. Wagner,* 400 S.W.2d 357 (Tex.Civ.App.—Waco 1966, writ ref'd n. r. e.).

■ The warnings signs that were located along the highway were adequate warnings for the dangers of an ordinary rural railroad crossing. Every railroad crossing is dangerous, but it is only crossings which are found to be extra hazardous that place the higher duty upon the railroad to use extraordinary means to warn travelers along the road. *Ft. Worth & Denver Ry. Co. v. Williams,* 375 S.W.2d 279, 283 (Tex. 1964); *Missouri, K. & T. Ry. Co. v. Magee,* 92 Tex. 616, 50 S.W. 1013 (1899); *Missouri, K. & T. Ry. Co. v. Long,* 299 S.W. 854 (Tex.Comm.App.1927, judgmt. adopted). The plaintiffs in the case before us had to show not that the railroad crossing was dangerous; they had to show that it was extra hazardous.

The plaintiffs obtained a favorable jury finding that the crossing was extra hazardous and conditioned upon that finding the jury additionally found that the railroad was negligent in failing to have an automatic warning signal at the crossing. There was evidence that such a signal might consist of flashing red lights. The jury refused to find that the railroad was negligent in failing to break the train into smaller units, in failing to have lights or reflectors on the sides of the railroad cars, in failing to put out flares at the crossing, or in failing to place a flagman with a lantern at the crossing. The court charged the jury: "A railroad crossing is extra hazardous when, because of surrounding conditions, it is so dangerous that persons using ordinary care cannot pass over it in safety without some warning other than the usual cross arm sign."

■ The central question in this appeal is whether there is any evidence which supports the jury finding that the crossing was extra hazardous, upon which finding the duty to provide the additional warning device is grounded. The plaintiffs relied upon several kinds of evidence to establish that fact: the view of the crossing was obstructed, the crossing was obscured by fog, there had been prior accidents at the crossing, and the crossing had a local reputation as an especially dangerous one. Missouri Pacific says that none of the evidence established the extra hazardous nature of the crossing.

Mr. John Pearson, a resident in the farm community, had lived in the locality all his life. He testified that a growth of trees obstructed the view of the crossing. This is not a case of an approaching train and a car that collide at a crossing; it is that of a car running into the side of a train that had already reached and was occupying the crossing. *See Zamora v. Thompson,* 250 S.W.2d 626 (Tex.Civ.App.—San Antonio 1952, writ ref'd); *Texas & N. O. R. R. Co. v. Stratton,* 74 S.W.2d 741 (Tex.Civ.App.—San Antonio 1934, writ ref'd); *Missouri-Kansas-Texas R. R. Co. v. Bernhardt,* 418 S.W.2d 368 (Tex.Civ.App.—Austin 1967, writ ref'd n. r. e.). Mr. Pearson at first testified that trees and shrubs interfered with visibility of a traveler on the road, but when confronted with a picture of the crossing taken five days after February 2, the date of the collision, he admitted that there was no obstruction in the open pasture land during the wintertime when the trees were bare of their foliage. The photograph shows that the crossing was open and unobstructed.

The evidence that the crossing was obscured by fog does not support the finding that the crossing was extra hazardous. There was evidence that fog was more prevalent along the Brazos River which paralleled the railroad tracks near the point of the collision. This court and many oth-

ers have rejected foggy conditions as proof of more than ordinary danger. The facts in *Texas & N. O. R. R. Co. v. Compton,* 135 Tex. 7, 136 S.W.2d 1113 (1940), were that just after midnight the plaintiff ran into the sixtieth car of a freight train consisting of eighty-seven cars. The engine was already more than one-half mile beyond the intersection. The intersection of the road and track was also on a flat prairie without any obstructions. "The night was dark and foggy and the visibility was poor." 135 Tex. at 9, 136 S.W.2d at 1114. The court regarded the crossing as an ordinary one which did not cast a higher duty upon the railroad company to provide extraordinary precautions.

*Texas & N. O. R. R. Co. v. Stratton,* 74 S.W.2d 746 (Tex.Civ.App.—San Antonio 1934, writ ref'd), reversed a jury finding that a crossing was more than ordinarily dangerous in the nighttime. That was a case in which the decedents during the nighttime ran into the middle of a moving train of eight cars. The approach to the crossing was over a straight, even and level country road for about 900 feet before reaching the crossing. There was testimony that the accident occurred during the wintertime when the vicinity "was usually enveloped in a heavy fog" that obscured the vision. 74 S.W.2d at 747. The countryside was open except for some mesquite trees that were bare of foliage at that time of the year. A companion case also decided as a matter of law that the crossing was not extra hazardous. *Texas & N. O. R. R. Co. v. Stratton,* 74 S.W.2d 741 (Tex.Civ.App.—San Antonio 1934, writ ref'd).

The facts in *Panhandle & Santa Fe Railway Co. v. Liscomb,* 365 S.W.2d 190 (Tex. Civ.App.—El Paso 1963, writ ref'd n. r. e.), were that a driver just after midnight approached a spur track almost at a right angle. The road was straight but had a slight upward grade. It was dark but there was no fog. The driver collided with the fourth car from the front of the train. The court held, as a matter of law, that there was no evidence of an extra hazardous crossing.

*Missouri-Kansas-Texas Railroad Co. v. Beasley,* 321 S.W.2d 938 (Tex.Civ.App.—Eastland 1959, writ ref'd n. r. e.), collects a number of cases in which there was fog at the time of a nighttime collision with a train that was crossing a highway. That court also rejected as a matter of law the contention that fog made the crossing extra hazardous. It cited in support of its rendition of judgment for the railroad in addition to *Compton* and the *Stratton* cases, *Texas & N. O. R. R. Co. v. Beard,* 91 S.W.2d 1080 (Tex.Civ.App.—Beaumont 1936, writ ref'd); *Reid v. Texas & N. O. Ry. Co.,* 254 S.W.2d 164 (Tex.Civ.App.—Galveston 1953, writ ref'd n. r. e.); *Lundberg v. M–K–T R. R. Co.,* 232 S.W.2d 879 (Tex.Civ.App.—Waco 1950, writ ref'd n. r. e.) (cloudy but no fog); *Cross v. Wichita Falls & S. R. R. Co.,* 140 S.W.2d 567, 569 (Tex.Civ.App.—Fort Worth 1940, no writ); *Thompson v. St. Louis Southwestern Ry. Co.,* 55 S.W.2d 1084, 1085 (Tex.Civ.App.—Texarkana 1932, no writ).

The third kind of evidence upon which the plaintiffs relied was that of prior accidents. The defendant railroad objected to the admissibility of the evidence because it invaded the province of the jury and there was no proof of a predicate that there was a similarity of conditions in the former accidents and the Cooper accident. The objection also insisted upon proof that the evidence was in a "time frame . . . that . . . is meaningful," in other words, not too remote in time. The objection that the plaintiffs had failed to lay a proper predicate was a good one and the court erred in overruling it. The plaintiffs were required to show that the earlier accidents occurred under reasonably similar but not necessarily identical circumstances. *Karr v. Panhandle & Santa Fe Ry. Co.,* 153 Tex. 25, 262 S.W.2d 925, 928, 932 (1953); *Dallas Ry. & Terminal Co. v. Farnsworth,* 148 Tex. 584, 227 S.W.2d 1017 (1950); *Reynolds & Huff v. White,* 378 S.W.2d 923 (Tex. Civ.App.—Tyler 1964, no writ); *Panhandle & Santa Fe Ry. Co. v. Liscomb,* 365 S.W.2d 190 (Tex.Civ.App.—El Paso 1963, writ ref'd n. r. e.); *Texas & N. O. R. R. Co. v. Davis,* 210 S.W.2d 195, 205 (Tex.Civ.App.—Beaumont 1948, writ ref'd n. r. e.).

After the railroad's objection was overruled, the plaintiffs elicited the testimony of John Kilgore, a newspaperman from Rosebud, that he knew about two other accidents that had occurred at the crossing. He said that one accident involved a "Bama pie" man out of Austin;[1] the other accident concerned an elderly couple who approached the same crossing from the east. On cross-examination Mr. Kilgore said he was not able to state whether the train ran into the car or the car ran into the side of the train that was already crossing the track. He also testified that the accident happened in the daytime, but he knew nothing else about it.

Plaintiffs then offered the testimony of Mr. Pearson about prior accidents. The railroad again insisted upon the exclusion of the evidence until plaintiff proved a proper predicate, and when the trial court overruled the objection, plaintiff asked "[D]o you have knowledge of whether or not accidents had occurred there more than one time?" Pearson answered, "Yes sir, there were other accidents there." That is all of his testimony on the subject.

The prior "Bama pie" man's accident happened during the daytime, and it resulted in a death. The other accident occurred when two elderly people approached the crossing from the east. There is no other evidence except that which the railroad developed on cross-examination showing that the witness Kilgore knew nothing about the circumstance of the accident involving the elderly couple and only that the other accident occurred in daytime. Pearson's one line of testimony provides no predicate for either accident. Circumstances of neither accident were shown. We conclude that the prior accident testimony was not supported by a proper predicate that the earlier accidents occurred under similar circumstances. *Dallas Ry. & Terminal Co. v. Farnsworth,* 148 Tex. 584, 227 S.W.2d 1017 (1950).

The fourth kind of evidence upon which plaintiffs relied to prove the extra hazardous nature of the crossing was the testimony of witnesses Kilgore[2] and Pear-

---

1. This is all of Mr. Kilgore's testimony about prior accidents:

Q. . . . But do you know of an accident that happened to a man that was a pie salesman?
A. Sir, I believe that was prior to this accident. That's a long time ago, but I believe that happened to the pie man, the Bama pie man—I believe he was out of Austin—prior to this accident.
Q. Okay. Then do you know of an accident that happened to an elderly couple at this same crossing?
A. They were coming from the other direction.
Q. All right.

On cross-examination Kilgore testified:

Q. Okay. Now this collision between a railroad—railroad train and the Bama truck, do you happen to know whether that collision occurred at the front of the train? That is, did the train run into the truck that was on the crossing?
A. I truthfully cannot say.
Q. All right. How about the elderly couple coming from the other way? Do you know whether—
A. No, I don't know.
Q. So you don't know whether in those cases a hundred and three or more cars had gone over the crossing, do you?
A. No, I can't say that.

\* \* \* \* \* \*

Q. Okay. All right, sir. But it would be fair to say—were these other two accidents daytime accidents? The Bama truck and the other?
A. The Bama truck was, yes.
Q. All right. So, so far as you know, it wasn't a whole lot like a car running into the one hundred and third box car of a train, was it, at night in a fog?
A. No, sir.
Q. And you just don't know anything about the other one?
A. I don't recall. There has been a lot of film rolled through my camera in that many years.

2. Q. All right, sir. And I will ask you this: At the time that this accident happened, in regard to people who were in the vicinity and were acquainted with the crossing, did it have the reputation as being a dangerous crossing. I mean had there been enough accidents—
A. Definitely so, yes, sir. There is no warning there. Yes, there is a warning there. There is a sign. The regular round railroad sign. Also on the highway surface itself there were the regular warnings—railroad crossing warnings. But prior to this, yes, sir, we considered it a dangerous crossing.
Q. All right. In other words, in the community it had that reputation, is that right?
A. Yes, sir.

son[3] that the crossing had a reputation for being dangerous.

The railroad's objections to witness Kilgore's testimony were addressed both to the evidence of prior accidents and the reputation testimony. The two kinds of testimony were both brief and intermingled. One objection was that the evidence invades the province of the jury. That objection ordinarily means that the question calls for a conclusion or opinion about an ultimate fact about which the jury is as competent as a lay witness to determine. Norvell, *Invasion of the Province of the Jury,* 31 Texas L.Rev. 731, 733–36 (1953). The objection has been held to be too broad. *Hooten v. Dunbar,* 347 S.W.2d 775, 778 (Tex.Civ.App. —Beaumont 1961, writ ref'd n. r. e.). But later when the witness Pearson testified, the railroad objected to the same kind of evidence because it was hearsay.

Certain kinds of reputation or hearsay evidence are admissible as exceptions to the hearsay rule. Reputation of old land boundaries, family pedigree, and a person's moral character are such exceptions. 2 C. McCormick & R. Ray, Texas Law of Evidence, § 1321 *et seq.* (1956). We have found no instances in which reputation has been used to prove a controlling issue in a tort case such as the extra hazardous nature of a railroad crossing. That kind of evidence was excluded in *Louisville & N. R. R. Co. v. Hall,* 87 Ala. 708, 6 So. 277 (1888), and *Otis Elevator Co. v. McLaney,* 406 P.2d 7 (Alaska 1965). *See* C. McCormick, Handbook of the Law of Evidence § 249 (2d ed. E. Cleary 1972). The evidence was hearsay and, since it did not fall within any exception to the hearsay rule, it was incompetent evidence. *Texas Co. v. Lee,* 138 Tex. 167, 157 S.W.2d 628 (1941).

The courts below were in error in giving weight to the testimony about prior accidents and the crossing's reputation and the judgments must be reversed for that reason. The reputation evidence is inadmissible and incompetent to prove extra hazardousness. Ordinarily the error in admitting improper evidence would call for a remand. The only error that might be corrected by a remand would be to afford witnesses Kilgore and Pearson opportunity to testify to show the similarity of the prior accidents to the Cooper accident. By cross-examination Mr. Kilgore has already testified that he knows nothing that would prove the similarity of the accidents. Mr. Pearson testified only that there had been prior accidents without undertaking to give any information about them. It does not appear that a retrial would enable the plaintiffs to make any better proof of the necessary predicate.

We reverse the judgments of the courts below and render judgment that the plaintiffs take nothing.

---

**3.** Q. Okay. I say with regard to the area in which the crossing was located, did it have a reputation as an extremely dangerous crossing?

A. Yes, sir, it did.