Craig B. MAY, Appellant,

v.

MISSOURI–KANSAS–TEXAS
RAILROAD COMPANY,
Appellee.

No. 6064.

Court of Civil Appeals of Texas,
Waco.

June 21, 1979.

Rehearing Denied July 5, 1979.

James R. Warncke, San Antonio, for appellant.

Louis S. Muldrow and Larry O. Brady, Naman, Howell, Smith, Lee & Muldrow, P. C., Waco, for appellee.

### OPINION

JAMES, Justice.

This is a railroad crossing accident case between Plaintiff's motor vehicle and a flatcar of Defendant's freight train parked on the crossing. After jury verdict a judgment was entered that Plaintiff take nothing, from which Plaintiff appeals. We reverse and remand for a new trial on the merits.

Plaintiff-Appellant Craig B. May brought this suit against Defendant-Appellee Missouri-Kansas-Texas Railroad Company for personal injuries and damages arising out of the auto-train collision hereinabove mentioned. At or about 1:40 AM in the early morning hours of June 13, 1976, Defendant's northbound freight train, consisting of 39 cars, stopped at a red block signal in or near Temple, Texas. Defendant's train stopped at the block signal (where the M-K-T tracks cross the Santa Fe Ry. Co. tracks) and remained stopped until the operatives would receive express permission to proceed across the Santa Fe tracks. At the time of the accident in question, Defendant's engine was about 2000 feet north of the Taylor Road crossing, said crossing being the place where this accident occurred. At said time about 10 cars of Defendant's train were standing south of the crossing, with an unloaded flatcar sitting astraddle of the Taylor Road crossing. The evidence is conflicting concerning the length of time the freight train had been blocking the crossing before the accident occurred, as more particularly hereinafter discussed; however, be that as it may, immediately prior to the accident, Plaintiff May was driving his motor vehicle in an easterly direction in the 600 block of Taylor Road and thereupon ran into the Defendant's flatcar parked upon said crossing. There were no street lights, automatic signal devices, flares, flagmen or any other warning devices located at this crossing, except an unlighted crossbuck sign evidencing a railroad crossing. In other words, the Taylor Road crossing was shown to be an uncontrolled grade crossing. Taylor Road slopes gradually downward on either side respectively for a considerable distance as this crossing is approached, with this difference: as one looks east toward the crossing, the roadway as stated slopes gradually downward for a considerable distance until it gets to a point 64 feet west of the railroad tracks, at which point the road starts an upward slope to the crossing, so that virtually at no point would an approaching automobile headed east as was Plaintiff May, have its headlights beamed perpendicular to a train occupying the crossing. On the other hand, as one looks west toward the crossing, the roadway slopes gradually downward for a considerable distance all the way to the crossing. As one looked east on Taylor Road toward and beyond the crossing, as was Plaintiff May on this occasion, the background was dark because such view is into a rural area; whereas, as one looked west on Taylor Road toward and beyond the crossing, the background lights from the City of Temple existed. From the record it appears that the Taylor Road crossing is on the eastern outskirts of the City of Temple, Texas.

Trial was had to a jury which found, or failed to find as hereinafter indicated, in response to the following numbered special issues, as follows:

(1) The jury failed to find that the railroad crossing in question was extra-hazardous as a nighttime crossing.

(2) No answer was made, nor was an answer required to Special Issue No. 2, wherein the jury was asked if the Defendant Railroad Co. knew or through the exercise of ordinary care should have known that the crossing was extra-hazardous as a nighttime crossing.

(3) The jury failed to find that on the occasion in question the Defendant was negligent in failing to use a flare, lantern, light, automatic signal light, or any other means to warn approaching motorists of the presence of the flatcar in question upon the crossing.

(4) Special Issue No. 4 was a proximate cause issue conditioned upon an affirmative finding in answer to Special Issue No. 3, to

which (No. 4) no answer was given or required.

(5) The jury failed to find that the Defendant's failure to use any means to warn approaching motorists of the presence of the flatcar on the crossing in question was gross negligence.

(6) The jury found that Plaintiff May failed to keep a proper lookout, which was, in answer to Special Issue No. 7, a proximate cause of the collision in question;

(8) That Plaintiff May failed to make application of his brakes in a manner that a reasonable prudent person would have made, which was (No. 9) a proximate cause of the collision in question;

(10) That Plaintiff May drove his vehicle at a greater rate of speed than a reasonable prudent person would have driven, which was (No. 11) a proximate cause of the collision;

(12) That Plaintiff May was driving his vehicle while under the influence of an intoxicating beverage, which (No. 13) was negligence, and (No. 14) a proximate cause of the collision.

(15) The jury further found that the Defendant's flatcar was plainly visible before Plaintiff May reached a point 15 feet from the nearest rail of the track on which the train was situated; that (No. 16) May failed to stop his vehicle within 50 feet, but not less than 15 feet, from the nearest rail of the track on which Defendant's train was situated; that (No. 17) such failure was negligence, and (No. 18) a proximate cause of the collision in question.

(19) The jury did not reach the comparative negligence issue.

(20) The jury found Plaintiff May's damages to be $13,000.00.

(21) The jury did not answer the exemplary damage issue, and no answer was necessary as it was submitted conditionally upon an affirmative answer to Special Issue No. 5 hereinabove.

Pursuant to and in harmony with the jury verdict, the trial court entered judgment that Plaintiff May take nothing, from which he appeals.

Plaintiff-Appellant asserts twenty points of error. We will discuss only those points of error which we believe are reversible in nature and which in our opinion require a remand for retrial on the merits, plus additional points of error which we hope may be helpful in a retrial of the case.

Plaintiff-Appellant complains that the trial court excluded evidence concerning six accidents that had occurred at this same crossing, four of which occurred prior to May's accident, and two of which occurred subsequent to May's collision.

It seems to be well-settled law that evidence of prior accidents or near accidents is proper in determining whether the crossing is unusually dangerous or extra-hazardous as a nighttime crossing at the time of the accident, and in determining whether the Railroad Company knew, or in the exercise of ordinary care should have known, of the alleged unusually dangerous or hazardous conditions surrounding the crossing at the time of the accident. *Missouri, K. & T. RR. Co. v. Long* (Austin, Tex.Civ.App.1929) 23 S.W.2d 401, 403, writ refused. For testimony of prior accidents to be made admissible, our Supreme Court has placed the burden on the plaintiff to "show that the earlier accidents occurred under reasonably similar but not necessarily identical circumstances." *Missouri Pacific Railroad Co. v. Cooper* (Tex.1978) 563 S.W.2d 233 at page 236. Also see *Karr v. Panhandle & Santa Fe Ry. Co.* (1953) 153 Tex. 25, 262 S.W.2d 925, 928, 929; *Missouri-Kansas-Texas Railroad Co. of Texas v. McFerrin* (Austin, Tex.Civ.App.1955) 279 S.W.2d 410, 418, reversed on other grounds by our Supreme Court in 156 Tex. 69, 291 S.W.2d 931; *Reynolds & Huff v. White* (Tyler, Tex.Civ.App.1964) 378 S.W.2d 923, 930, 931, no writ; *Texas & N. O. R. Co. v. Davis* (Beaumont, Tex.Civ.App.1948) 210 S.W.2d 195, 205, 206, NRE; *Missouri Pacific RR. Co. v. Thomas* (Beaumont, Tex.Civ. App.1979) 579 S.W.2d 46, application for writ of error filed in Supreme Court on May 8, 1979, presently pending.

In the case at bar we believe the plaintiff laid the proper predicate by his offer of evidence to show the reasonable similarity of the six accidents to the instant accident, to the end that the evidence concerning such other accidents were rendered admissible and should have been admitted into evidence. The Plaintiff-Appellant's basic contention is that the crossing in question was extra-hazardous at night, because said crossing was in a depression in the land wherein the approaches from each side by way of Taylor Road descended down to the crossing as hereinabove described, so that approaching motorists' headlights from either east or west would not pick up a railway car on the crossing in time to safely avoid an accident. Therefore, the circumstances that would render the other tendered accidents reasonably similar to that incurred by Plaintiff May would be that such other accidents occurred at night at the same crossing, since all approaching motorists, from either direction, would be approaching the crossing on a descending slope.

The first prior accident offered by Plaintiff-Appellant was that by Louis Peoples, a taxi driver, who testified that he had an accident at this same crossing in August 1973. Peoples approached the crossing from the east travelling in a westerly direction, about 1:30 AM to 2:00 AM at night. The train was sitting still, and Peoples hit a gondola car which was sitting on the crossing. Peoples had his headlights on bright, and was not able to see the train in time to avoid colliding with it. He said he thought he was 15 or 20 yards from the train when he first saw the train before he hit it, and that he could not see any of the city lights beyond the crossing. He was travelling 30 to 35 miles per hour when he applied his brakes in an effort to avoid hitting the train.

Mrs. Acencion Rodriguez had an accident at the Taylor Road crossing about 8 PM on December 1, 1975. She testified that it was very dark that night, that she was travelling west with her headlights on as she approached the crossing at a speed of about 25 miles per hour, that she looked both ways as she approached the crossing and was struck at the rear portion of her car by the train as she got on the crossing, that she was hurt and went to the hospital, and the railroad company settled with her. She said although she looked both ways as she approached the crossing that she never did see the train coming.

James Duncan Larsen testified that he had an accident at this same crossing during the nighttime hours on July 5, 1973; that he and another man with him had "had a few beers" before the accident; that he had his headlights on low beam, and was travelling about 30 miles per hour; that he was travelling west; that he first saw the train stopped on the track when he was about 50 feet from it; that he did not see the train in time to stop his car although he was looking straight down the road; that he struck a "rust colored hopper car" standing still on the crossing.

Benning Roe testified that he ran into a parked train at this crossing at about 2:00 AM November 13, 1977; that he was travelling east about 30 miles per hour and hit a parked train; that he had his headlights on dim, and was looking straight ahead but did not see the train until he was about 10 feet from it; that he hit his brakes but could not stop in time and hit a brown colored boxcar that was standing still on the crossing; that he had had "some beer to drink" that evening at a birthday party; that he was charged with driving while intoxicated and pleaded guilty thereto. Appellee asserts that this case is not reasonably similar to the case at bar and therefore inadmissible because Mr. Roe had been drinking prior to the accident; however, we believe the fact of Roe's having been drinking goes to the weight rather than to the admissibility of this testimony. Also Appellee attacked the evidence concerning this accident because it occurred after the accident in the case at bar; however, it has been held that reasonably similar accidents occurring subsequent to the subject case are admissible to show the extra-hazardous nature of the crossing. See *St. Louis, South-*

*western Ry. Co. v. Duffy* (Dallas, Tex.Civ. App.1957) 308 S.W.2d 202, 222, NRE. Moreover, we believe that reasonably similar accidents to the case at bar and occurring subsequently thereto are also admissible as bearing upon the issue of defendant's gross negligence and exemplary damages.

Van Alan Irvin testified that he had a collision at this crossing with a parked train at night on December 4, 1976; that he was travelling east; that he was going about 30 miles per hour and did not see the parked train until he was about 65 feet from it; that he had his lights on dim; that he was looking straight down the road, but could not stop in time to avoid hitting the parked train; that he had had "something to drink" that night and was charged originally with driving while intoxicated but that such charge was thereafter reduced to intoxication in a public place.

■ The trial court excluded Plaintiff's Exhibit No. 28, same being a certified copy of an accident report, which accident report is shown to be a part of the official records of the Texas Department of Public Safety and is certified by the Custodian of Motor Vehicle Accident Records of said Department. The accident report is shown to have been prepared by a city policeman of the City of Temple, Texas. Plaintiff-Appellant offered all of said report except the investigating officer's opinions under the authority of Article 3731a, Sections 1 and 3, Vernon's Texas Civil Statutes. Said Plaintiff's Exhibit No. 28 showed that Ray Sherman Wilkins had a collision with a moving train at the Taylor Road crossing at 1:00 AM on the night of March 4, 1972; that Wilkins was driving a 1963 Pontiac going east on Taylor Road and did not see the train and hit it and his car was dragged about 150 feet south of the crossing; the weather was clear and the night was dark. We are of the opinion and hold that this exhibit showing this accident was admissible under Article 3731a, V.T.C.S. We further believe and hold that this accident is reasonably similar to the one in the case at bar. It is common knowledge that a moving train at night would be easier to see than a train standing still parked on the crossing.

■ We believe the trial court's exclusion from evidence of the six accidents hereinabove described constituted reversible error. Plaintiff-Appellant offered evidence of other accidents at this crossing which in our opinion was not sufficient or complete enough to show reasonable similarity of such other accidents to the accident in the case at bar. We will therefore not unnecessarily lengthen this opinion by discussing such other accidents.

Plaintiff-Appellant May further complains of the trial court's refusal to permit him (Appellant) to file a trial amendment and submit special issues concerning Plaintiff-Appellant's contention that the Defendant's train violated Article 6701d–5, V.T. C.S., by wilfully obstructing the Taylor Road crossing for more than 5 minutes. We sustain this contention. At the close of Plaintiff's testimony, and prior to Defendant putting on its testimony, Plaintiff tendered a trial amendment alleging that Defendant had violated Article 6701d–5 by wilfully obstructing the crossing for more than 5 minutes immediately prior to the May accident, and that such violation was negligence per se and a proximate cause of the accident in question. Plaintiff asserted that he did not learn of evidence to this effect until just before the trial began. The trial court refused to permit Plaintiff to file the trial amendment. Then Plaintiff timely requested the submission of special issues inquiring if Defendant did wilfully obstruct the crossing more than 5 minutes, and whether this was a proximate cause of the accident. The trial court refused to submit these issues to the jury.

There was conflicting evidence on this point concerning how long the train had been parked on the crossing before Plaintiff May hit it. Mr. Womack, the Defendant's engineer of the train in question, testified that "as close as I can determine, it was three or four minutes." This was in sharp contrast with the testimony of Doris Nell Allcorn, who lived about a half block from the Taylor Road crossing. She said she was awake watching television at the time this

particular train went by the crossing, and she also heard the wreck when Mr. May's car collided with the train, and that "the train had been by about 15 or 20 minutes when the wreck occurred."

Since the evidence raised a sharply disputed fact issue concerning the length of time the train had blocked the crossing, we are of the opinion and hold that the trial court abused its discretion in refusing to permit Appellant to file the trial amendment, and in refusing to submit the requested special issues concerning this matter to the jury. See *Missouri-Kansas-Texas R. Co. v. McLain* (1939) 133 Tex. 484, 126 S.W.2d 474; *St. Louis, B. & M. Ry. Co. v. Brack* (San Antonio, Tex.Civ.App.1936) 102 S.W.2d 261, 267, 268, no writ. See pp. 267 and 268 of *Brack* concerning the proximate cause aspects of blocking the crossing in violation of this statute. A jury finding to the effect that this statute has been violated constitutes negligence per se. *Hall v. A. T. & S. F. Ry. Co.* (5th Circuit 1974) 504 F.2d 380, 384; *Louisiana & Arkansas Ry. Co. v. Hughes* (5th Circuit 1967) 374 F.2d 106, 107.

Plaintiff-Appellant complains that he was not permitted to file a trial amendment nor to get submitted to the jury special issues concerning his contention that the Defendant-Appellee's train failed to blow its whistle prior to the collision in question. Appellant asserts the Appellee violated a duty imposed by Article 6559h–11, V.T.C.S. We do not agree. Art. 6559h–11 has no application to a train which is already stopped at the time of the collision. There is no duty on the Defendant-Appellee Railroad to blow a whistle to warn that the crossing is already blocked. *Reid v. Texas & New Orleans R. Co.* (Galveston, Tex.Civ.App.1952) 254 S.W.2d 164, 167, NRE; *M–K–T R. Co. v. Wagner* (Waco, Tex.Civ.App. 1966) 400 S.W.2d 357, 361, NRE; *Southern Pacific Transportation Co. v. Peralez* (Corpus Christi, Tex.Civ.App.1976) 546 S.W.2d 88, 93, NRE. The trial court properly refused to permit the filing of this trial amendment and to submit these requested special issues.

Since we are of the opinion that this case should be retried, we respectfully point out that Plaintiff-Appellant complains of the trial court's submission to the jury of Special Issues 15 through 18, over Plaintiff-Appellant's objection, inquiring whether or not the train was plainly visible to the Plaintiff before he reached a point 15 feet from the track, and if he failed to stop his vehicle within 50 feet but not less than 15 feet from such track, and whether such was negligence and a proximate cause of the accident, because (Appellant says) same constituted a submission under Article 6701d, Section 86, V.T.C.S., which statute (Appellant contends) is not applicable to the accident in question, because this train was not approaching the crossing. We sustain this contention.

Article 6701d, Section 86 does not apply to the case at bar. Here we have a train stopped and standing on the highway at the time of the collision. Article 6701d, Section 86 applies to an *approaching* train, as opposed to a *stopped* or *stationary* train. *Missouri-Kansas-Texas Railroad Co. v. McFerrin* (1956) 156 Tex. 69, 291 S.W.2d 931, 935; *Texas & New Orleans Railroad Co. v. Pettit* (Beaumont, Tex.Civ.App.1956) 290 S.W.2d 730, 752, NRE; *Swonke v. Hildebrandt Engineering Co.* (Waco, Tex.Civ.App.1965) 389 S.W.2d 355, 357, NRE.

Finally, Plaintiff-Appellant asserts the trial court erred in admitting into evidence the report of the blood alcohol test, same being page 332 of Defendant's Exhibit 22, for the reason that a chain of custody was not established to show that the blood sample analyzed was taken from Plaintiff-Appellant. We sustain this contention.

Defendant's Exhibit No. 22 is 440 pages in length, and consists of the medical records of Plaintiff-Appellant May in Scott and White Hospital. Said exhibit was admitted as a business record of said Hospital. At the time Defendant offered this exhibit into evidence, and before the trial court admitted it, Plaintiff-Appellant objected to page 332 thereof, same purporting to be the alcohol content report of a blood sample

from Plaintiff-Appellant taken from him in the emergency room about 3 AM about 1½ hours after the accident. The report shows "266 mg %" alcohol in Plaintiff's blood. Thomas Kerzee, a biochemist at Scott and White, testified that he analyzed the blood specimen which revealed this percentage of alcohol; that he made this test in the laboratory about 30 hours after the blood sample was purportedly taken. Kerzee had no independent recollection of conducting this test. There is no showing on the form as to who took the blood sample, and nobody knows who did take it from the Plaintiff, if such occurred. Customary procedure at Scott and White was shown to be that after a blood specimen is taken, it is put in a refrigerator in the laboratory, which is not kept locked, and there is no security sur-rounding the keeping of the specimen, which was analyzed some 30 hours after it was purportedly taken from Plaintiff. We believe the admission of this blood alcohol test under this state of the record was error.

For the reasons hereinabove set out, we hereby reverse and remand the cause for retrial.

REVERSED AND REMANDED.