Eva OSUNA, Appellant,

v.

**SOUTHERN PACIFIC RAILROAD (Southern Pacific Transportation Company), Appellee.**

No. 6283.

Court of Appeals of Texas, Waco.

Jan. 7, 1982.

Rehearing Denied Feb. 4, 1982.

Bob Andrews, Austin, for appellant.

Robert B. Burns, Jr., Thomas A. Broussard, McKay & Burns, P.C., Austin, for appellee.

HALL, Justice.

This is a railroad crossing accident case brought by plaintiff-appellant Mrs. Eva Osuna against Southern Pacific Transportation Company (sued as Southern Pacific Railroad). Summary judgment was rendered that plaintiff take nothing. Plaintiff appealed. We affirm the judgment.

■ To establish its right to summary judgment, defendant had the burden of establishing that no material fact issue existed in the case and that it was entitled to judgment as a matter of law. Rule 166–A(c), Vernon's Tex.Rules Civ.Proc.; *Town North Nat. Bank v. Broaddus*, 569 S.W.2d 489, 494 (Tex.1978). In determining the propriety of a summary judgment, both in the trial court and on appeal, all conflicts in the evidence are disregarded, the proof which tends to support the position of the party opposing the motion is accepted as

true, and all doubts as to the existence of a genuine issue of material fact are resolved against the movant. *Farley v. Prudential Insurance Company*, 480 S.W.2d 176, 178 (Tex.1972).

The accident in question occurred at approximately 1:00 A.M. on Monday, November 7, 1977, where defendant's single set of tracks cross U. S. Highway 183 about 1.3 miles north of the City of Leander, in Williamson County. Defendant's train, composed of four diesel engines and ninety cars, was crossing the highway. Plaintiff collided with the forty-first and forty-second cars. It is undisputed that automatic signal lights maintained by defendant for many years at the crossing to warn motorists of approaching and crossing trains were not working at the time of the accident, at least not on the side of plaintiff's approach. Plaintiff's basic contentions for reversal are that the summary judgment record does not conclusively establish (1) that the crossing was not extra hazardous and (2) that defendant was not negligent in failing to maintain the automatic signal in proper working condition or provide other adequate warning of the train at the crossing. Defendant's basic contentions are that the record shows as a matter of law that the crossing was not unusually hazardous and that, accordingly, defendant owed no duty to provide extraordinary warnings at the crossing.

Defendant's railroad ran generally east and west; and the highway ran generally north and south. However, the angle of their crossing was approximately 45° at the southeast and northwest corners. The paved portion of the highway was approximately 48 feet wide; and it was composed of four lanes, providing two lanes for traffic traveling in either direction. Plaintiff was traveling north, alone in her car, in the lane nearest the center of the highway. 600 feet from the crossing, the usual yellow round metal sign with an "X" and an "R" on it was stationed off the highway on plaintiff's side facing her. 350 feet south of the crossing, a large "X" with an "R" on each side was painted on the surface of the northbound lanes, spanning most of both lanes. Near the south side of the tracks and just off the shoulder of the highway on plaintiff's side there was the familiar cross-board sign erected on a white pole with the word "RAILROAD" written in black on one of the boards and the word "CROSSING" written on the other, facing northbound highway traffic. An automatic signal device with two lights was stationed on the pole immediately below the cross-boards. Plaintiff had crossed this crossing several times, was familiar with all of these warnings, knew they were there, and saw them as she approached the tracks. These warning signs located along the highway were held to be adequate warnings for the dangers of an ordinary rural railroad crossing, in *Missouri Pac. R. Co. v. Cooper*, 563 S.W.2d 233, 235 (Tex.1978), where the court noted that the presence of railroad cars already occupying the crossing and directly in front of the driver in that case (also a night time accident) was an additional warning of danger. The court said, "Every railroad crossing is dangerous, but it is only crossings which are found to be extra hazardous that place the higher duty upon the railroad to use extraordinary means to warn travelers along the road." Whether the circumstances surrounding a crossing at a particular time mark the crossing as extra hazardous is "a question solely for the determination of the jury, unless only one conclusion could be drawn therefrom by all reasonable minds." *Fort Worth & Denver Railway Company v. Williams*, 375 S.W.2d 279, 283 (Tex.1964).

The primary question for our decision is this: Does the summary judgment record conclusively establish that the crossing in our case was not more than ordinarily hazardous as a nighttime crossing at the time of the accident in question? We hold that it does.

Plaintiff was driving her 1970 Chevrolet automobile at the time of the collision. She was 40 years of age, and she had been driving cars for 20 years. The headlights on her car were on bright, and her speed was about 55 miles per hour, her usual

speed on highway travel. The highway south of the crossing is rather "curvy," and at the location of the round yellow sign 600 feet south of the crossing the highway begins a gentle curve to the right for northbound traffic which continues to the crossing. The highway inclines slightly from the sign to the crossing, but the railroad tracks are on a level with the road at the crossing, and there was nothing along the roadway that obstructed plaintiff's view of the crossing from the sign. Photographs made on the day of the accident show that in the daytime the crossing is plainly visible from the yellow sign, although, because of the curve, the view is partially across the right shoulder of the road.

■ Because of the curve, at the location of the yellow sign, the headlights on plaintiff's car did not shine on the crossing. However, plaintiff testified in her deposition that at approximately the location of the warning painted on the pavement (approximately 350 feet from the crossing) she could see in her headlights the white pole at the crossing which supported the cross boards and the automatic lights. From this location, at her speed, she said she could have safely stopped in time to avoid the collision if she had seen the train. As we have said, plaintiff ran into the forty-first and forty-second cars of defendant's ninety-car train. The record shows that, with the exception of the eleventh car, all of the cars in the train were "open hoppers" which have side walls ten to twelve feet high and have the general appearance of box cars. The only reasonable inference that may be drawn from these circumstances is that when plaintiff's headlights were shining on the white signal pole they were also shining on the box cars crossing the road directly in front of plaintiff. In other words, from a distance of approximately 350 feet back, which provided ample time to stop, plaintiff's headlights shone on the crossing and the moving train. This fact is corroborated by a plat in evidence drawn to scale, and photographs, which also establish that plaintiff's view of the crossing from the painted sign on the pavement continued without obstruction as she approached the

crossing. Plaintiff does not dispute these facts, but she testified that because of the darkness and the dark coloring of the unlighted box cars she could not and did not see the train until she was much closer. However, it is settled that the existence of these latter circumstances (unlighted box cars crossing the roadway at night) at a crossing that is not otherwise unusually dangerous does not render the crossing extra hazardous. *Missouri Pac. R. Co. v. Cooper*, 563 S.W.2d 233, 236 (Tex.1978); *Texas & N. O. R. Co. v. Compton*, 136 S.W.2d 1113, 1115, 135 Tex. 7 (1940); *Panhandle & Santa Fe Railway v. Liscomb*, 365 S.W.2d 190, 196 (Tex.Civ.App.—El Paso 1963, writ ref'd n.r. e.).

Plaintiff argues that "The railroad's installation of an automatic flasher-signal device at this heavily-highway traveled intersection [and the other circumstances surrounding the crossing, particularly the curve] may indeed make it an extra hazardous crossing, without more, considering how the public can be affected by the availability of the warning which they could reasonably expect to function, in the absence of some substitute extraordinary warning precaution." Heavy traffic on the highway at the time of plaintiff's accident might have rendered the crossing unusually hazardous, but this question is not before us because the record shows this was not the case. The only evidence on the amount of traffic came from plaintiff. She was not certain of her distance from the crossing when she first noticed the train. However, immediately upon seeing the train she applied her brakes as hard as she could and turned her car to the left in an effort to avoid colliding with the train. (The skid marks left by plaintiff's vehicle on the highway began approximately twenty feet south of the crossing). The rear of plaintiff's vehicle struck the train. Fearful of a fire, plaintiff crawled out a window as soon as the car stopped. She saw no other cars on the scene at that time. Thereafter, another motorist came up. He called the police, who came to the scene. An ambulance came after the police, and plaintiff was

carried to the hospital in the City of Georgetown. Plaintiff did not get the name of the motorist, and she "does not know of anybody else that could have seen the accident or any other motorist." The only reasonable deduction permitted by this evidence is that the highway traffic was very light at the time of plaintiff's accident.

■■ Prior to the accident plaintiff had never seen a train at the crossing, and thus she had never seen the automatic signal lights operating. Nevertheless, she knew the lights were there and that their purpose was to alert the motoring public that a train was approaching or crossing the highway. Because of her familiarity with the crossing, she also knew that the signal lights may be seen by a northbound driver "way before" the yellow sign is reached and that the lights are in continuous view from this point to the crossing. On the occasion in question she began looking toward the signal lights from a considerable distance south of the yellow sign for warning of a train, and she continued looking toward the lights as she traveled toward the crossing. Because the lights were not blinking, she assumed there was no train. Plaintiff contends that since the signal lights had been installed by defendant to warn the public of trains at or near the crossing she was entitled to rely upon them for that purpose at the time in question and that defendant was negligent in failing to maintain them in working condition. We disagree. Plaintiff's reliance upon the lights, under the present circumstances, would bear upon the issue of her negligence. *Texas & Pacific Railway Company v. Moore*, 329 S.W.2d 293, 304 (Tex.Civ.App.—El Paso 1959, writ ref'd n.r.e.); *Texas Mexican R. Co. v. Bunn*, 264 S.W.2d 518, 526 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.). But plaintiff has not cited any authority and we have found none which holds that the malfunction of warning lights at a crossing which, without the existence of the lights, is not unusually dangerous renders the crossing extra hazardous. Since the crossing in our case would not have been unusually dangerous at the time of plaintiff's accident even if the warning lights had not been in place,

defendant could not have been negligent in failing to maintain the lights in working condition. Plaintiff's claim of negligence upon this circumstance, under our record, would be contrary to the settled rule that the railroad owes the duty of extraordinary warning only at an extra hazardous crossing. See *Missouri-Kansas-Texas Railroad Co. v. Wagner*, 400 S.W.2d 357, 361 (Tex. Civ.App.—Waco 1966, writ ref'd n.r.e.); *Texas & N. O. R. Co. v. Stratton*, 74 S.W.2d 741, 743 (Tex.Civ.App.—San Antonio 1934, writ ref'd). In these cases under material facts quite similar to those in our case the holdings were made that extraordinary warnings were not required.

■ Two other matters are raised by the parties for our consideration. One is a motion by defendant for dismissal of this appeal for want of jurisdiction upon the grounds that plaintiff's making of cash deposit in lieu of cost bond and the filing of the transcript were not timely under the Rules of Civil Procedure in effect at the time of this appeal. This motion is based solely upon an asserted "letter judgment" from the trial judge to the parties, not signed, which preceded the formal signed judgment. Since the letter was not signed, it did not start the time-table within which the various steps of an appeal must be taken. The signed judgment did. Rule 306a, Vernon's Tex.Rules Civ.Proc. The motion is without merit. The other question involves an alleged oral admission by plaintiff's attorney at the hearing on the motion for summary judgment that the railroad crossing in issue was not extra hazardous. This admission was recorded in the judgment, and considered by the trial court. See *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 677 (Tex. 1979) regarding this procedure. Plaintiff asserts that if the admission was made, which she denies, it was erroneously considered because the record shows that it was withdrawn with notice to the court prior to the rendition of judgment. We need not decide this question since, as we have held, without consideration of the admission the summary judgment evidence

conclusively establishes that the crossing was not unusually hazardous at the time in question.

The judgment is affirmed.