The STATĖ of Texas, Appellant,

v.

M. Joe GILBRETH, Appellee.

No. 12153.

Court of Civil Appeals of Texas, Austin.

July 10, 1974.

Rehearing Denied July 17, 1974.

John L. Hill, Atty. Gen. of Texas, R. L. Lattimore, Asst. Atty. Gen., Austin, for appellant.

Phil Mockford, Austin, for appellee.

O'QUINN, Justice.

The State of Texas brought this suit against John I. Bodle as the operator of The Swingers Club in Travis County to collect delinquent admissions taxes, penalty and interest amounting to $2,596.90. The State made M. Joe Gilbreth, owner to the land and building where the club was located, a party to the suit under provisions of Article 21.04(2), Title 122A, Taxation-General, V.A.T.S., seeking to effect foreclosure of the State's statutory lien on the Gilbreth property.

The cause was tried before the court without the aid of a jury. The State offered evidence that the period in which the tax accrued began January 1, 1967 and ended October 31, 1967, during which period Bodle was the operator of The Swingers Club, also known as Swinger-A-Go-Go, and Gilbreth owned the real property in which the club was operated.

Upon conclusion of the State's evidence, Gilbreth moved for judgment on the ground that the State had neither pleaded nor proved that notice of the tax lien on Gilbreth's property had been filed in the office of the county clerk of Travis County as required by Article 1.07, Title 122A, Taxation-General. The State sought to amend its pleadings to allege that notice of the lien had been filed and to make proof of such filing.

The trial court denied the State's motion to amend and thereafter entered judgment

allowing the claim for taxes against Bodle but disallowing foreclosure of the tax lien against Gilbreth's property and discharging him from the suit.

We will affirm judgment of the trial court.

Article 21.04(2), in the period in which the taxes accrued, provided that the State had a prior lien for admissions taxes and penalties "on all property used by the owner or operator of any place of amusement as designated" in the statute. (Acts 1959, 56th Leg., 3rd C.S., ch. 1, p. 187.) In 1961 the Legislature amended Article 1.07 (Title 122A, Taxation-General) to require that a tax lien affecting real estate be recorded in the county in which the real property was located. (Acts 1961, 57th Leg., ch. 104, p. 201.)

In this appeal the State contends that Article 1.07, requiring the filing of notice of the tax lien if the lien affects real estate, is not applicable to real estate owned, as in this case, by the landlord and not by the operator. In support of its position the State relies on State v. Rope, 419 S.W.2d 890 (Tex.Civ.App.Austin 1967, writ ref. n. r.e.), in which this Court held that Article 21.04(2) imposed a valid lien on the property of the landlord if the tenant, operating an amusement place on the premises, failed or refused to pay the admissions tax. In that case the landlord, Rex Rope, contended that Article 1.07 repealed Article 21.04(2) so as to limit the State's tax lien for admissions taxes to the taxpayer's property. This contention, although not properly brought forward on appeal, would have been overruled, if properly presented, under the holding of this Court on the same day in Miller v. Calvert, 418 S.W.2d 869 (Tex.Civ.App.Austin 1967, no writ). (See Rope, 419 S.W.2d 899.)

In Rope the issue of whether the tax lien had been recorded was not raised, and the holding of this Court will not sustain the contention that Article 1.07 does not require recording of the tax lien to impose the lien on real property owned by the landlord, but used by the operator in conducting the place of amusement.

Rope was tried by the district court on motions filed by both parties for summary judgment. The State having been unable to obtain service on the operator, dismissed as to him and proceeded against Rope, the landlord. In support of his motion for summary judgment, Rope filed his affidavit to which he attached as an exhibit a letter from the Comptroller of Public Accounts advising Rope " . . . that the State of Texas has *filed a tax lien in accordance with Articles 1.07*, 1.07A, 1.07B and 21.04(2) of Title 122A, Taxation-General, Vernon's Texas Civil Statutes on the personal and *real property used in the operation of the above place of business* [Bridgeport Ballroom]." (Emphasis added)

The trial court, in the case at bar, filed findings of fact and conclusions of law. The court concluded that Gilbreth had no liability for payment of the taxes and that no lien ever attached to the real property belonging to Gilbreth "based upon the provisions of Article 1.07 et seq. Title 122A, Taxation-General . . . and upon the decision of the Texas Supreme Court in State of Texas v. Fred Smith, 434 S.W.2d 342."

In *Smith* the holder of a vendor's lien and deed of trust was contending against the State in its effort to foreclose a tax lien on real property owned by the operator of the place of amusement. There was no evidence that the State recorded its tax lien with respect to the real property. Two tax periods were involved, the latter period being one subsequent to the effective date of Article 1.07 as amended in 1961, and the other being prior to that date. Judgment for taxes for the later period against the operator was affirmed, but judgment foreclosing the State's lien was reversed and the lien disallowed.

Gilbreth relies on language of the Supreme Court in *Smith* in his contention that the recording requirements of Article

1.07 are applicable to the lien authorized on real estate in Article 21.04(2), whether owned by the operator or by his landlord. Although under the facts of *Smith* application of the recording statute was limited to a contest between the State and another lienholder, and not, as in this case, between the State and the landlord owning the property on which the operator conducted the business subject to the tax, the language Gilbreth invokes is sufficiently broad to apply to both contests:

"We regard as inescapable the conclusion that the Legislature intended the filing of notice requirement on the 1961 amendment to apply to the tax liens on real estate specifically authorized in Article 21.04(2) of Title 122A. The language of the amendment is all inclusive and is devoid of any indication that its provisions are inapplicable to the admissions tax lien." (434 S.W.2d 346, col. 2)

". . . we are unable . . . to sustain the position of the State that the Legislature intended that the lien on real estate authorized in Article 21.04(2) would not be subject to the requirements of Article 1.07 as amended." (434 S.W.2d 346, col. 2)

The State's position is that the Supreme Court did not mean to extend coverage of the 1961 amendment to interests not specifically named in the statute, namely, ". . . to property subjected to the occupation tax lien and not owned by the person carrying on the business, nor subject to other interests" enumerated in Article 1.07. The State concedes that the language used in the Supreme Court's opinion "may be broad enough in context" to include the landlord's realty, ". . . but, if so interpreted, it could be no more than dicta, and, as such, not sufficiently authoritative to require the State to follow its terms without question in carrying out the constitutional duties of taxation."

■ It is our view that the Supreme Court intended to say, and we think correctly, that any lien accorded the State un-

der Article 21.04(2) affecting real estate, was subject to the recording requirements of Article 1.07 as amended in 1961. (See our opinion in *Smith*, 420 S.W.2d 209, col. 2.) We hold that the rule just stated is applicable to the facts of this case, and that Article 1.07 required that the State record its tax lien in Travis County as a prerequisite to foreclosure on the real estate owned by Gilbreth and used by the operator of the place of amusement.

■ Under its second and remaining point of error, the State contends that the trial court erred in refusing to permit the State to amend its pleadings and offer proof that notice of the tax lien had been filed.

The State filed this suit on March 12, 1968, to collect admissions taxes for the months of January through October of 1967. The State pleaded that " . . . by virtue of Articles 1.07, 1.07A and 1.07B of Title 122A, [the State] has a preferred lien for such taxes, penalties and interest on all of the property of the Defendant, John I. Bodle, which lien is first and prior to any and all other existing liens, contract or statutory, legal or equitable, and regardless of the time such liens originated, subject only to the provisions of such articles. In addition . . . by virtue of Article 21.04 of Title 122A, [the State] has a prior lien for such taxes, penalties and interest on all property used by the owner or operator of the place of amusement. The property so used is described in Exhibit B, attached hereto . . . [and] Defendant M. Joe Gilbreth owns or claims some right, title or interest in such property."

The State filed its first amended original petition, the pleading upon which the parties went to trial, on November 25, 1968. The pleadings did not include allegations that the State had filed its tax lien in accordance with Articles 1.07, 1.07A, 1.07B and 21.04(2) of Title 122A on the real property used in the operation of the place of business subject to the admissions taxes.

The case was tried on November 1, 1973, almost five years subsequent to the State's final pleading in 1968. The Supreme Court's decision in Smith v. State, *supra,* was filed November 6, 1968, about three weeks before the State filed its last pleadings. The opinion of this Court in the same case, which the Supreme Court affirmed, had been filed in 1967.

The parties stipulated that, in overruling the State's motion to amend its pleadings, the trial court took notice of the fact that since the State filed its last pleading in November of 1968, the cause had been set for trial five times, and prior to the trial from which this appeal was taken the cause had been on the trial court's "dismissal docket for an extended period of time." The parties also stipulated that "In the light of this history the Court felt that the Plaintiff had had ample opportunity to get its pleadings in order for trial and Plaintiff's said request was denied by the Court."

After the State introduced the Comptroller's certificate, presumably in compliance with Article 1.08, in proof of the amount of taxes, penalties and interest owed by Bodle as operator of the club, and offered a description of the real property used in the taxable operation, Gilbreth admitted through counsel that he owned the property and had allowed it to be used for the taxable operation. At this point, the State concedes, it "rested its evidence in chief." No proof had been made or offered that notice of the tax lien had been given by recording the lien in the public records of Travis County in compliance with Articles 1.07 et seq.

When Gilbreth moved for judgment, the State sought to amend and plead filing of the lien and to make proof of a recording. It is not clear from the record whether the State sought time in which to file the lien and then amend its pleadings, or to amend the pleadings and then show that the lien was already on file. The trial court refused to allow the State to amend and announced the judgment which was entered later, on November 21, 1973.

■ The State assumes the burden on appeal to show that the trial court abused its discretion in not permitting the pleadings to be amended. The mere fact that the court refused to permit the State to amend is not alone sufficient. Patino v. Texas Employers Insurance Association, 491 S.W.2d 754, 756 (Tex.Civ.App.Austin 1973, writ ref. n. r. e.). If, as suggested by the State in its brief on appeal, proof of the recording entailed no more than producing the records already in existence in the courthouse where the cause was on trial, this showing could have been made by a bill of exception, or other appropriate means, to become a part of the record on appeal. In the absence of showing of the facts attending the presentation of the State's motion and action of the trial court in refusing to allow the amendment, this Court will presume that the trial court did not abuse its discretion. Patino, *supra*, and cases cited.

■ The State has filed in this Court a motion to strike from Gilbreth's brief certain statements of "purported facts unsupported by the record." We have examined the statements to which the State objects, in the light of the record, and conclude that the statements, even if not supported by the record constitute no more than theories of an adversary and have in no way prejudiced the rights of the State, nor have the statements influenced this Court in its decision. The motion is overruled.

The judgment of the trial court is in all things affirmed.

Affirmed.