Yvonne WENDELL, Et Al., Appellants,

v.

**CENTRAL POWER AND LIGHT COMPANY, Appellee.**

No. 13-82-362-CV.

Court of Appeals of Texas, Corpus Christi,

June 28, 1984.

Rehearing Denied Aug. 31, 1984.

\*     \*     \*     \*     \*     \*

Carl Raymond Crites, San Antonio, for appellants.

James W. Wray, Jr., Kleberg, Dyer, Redford & Weil, Corpus Christi, for appellee.

Before GONZALEZ, YOUNG, UTTER, KENNEDY and SEERDEN, JJ., En Banc.

## OPINION

GONZALEZ, Justice.

This is an appeal from a take-nothing judgment in a wrongful death action. Appellants, plaintiffs below, are the wife and children of the deceased, who was electrocuted when his rig came into contact with a power line owned by appellee. Appellants filed suit against appellee and alleged various acts of negligence. The jury found all liability issues against appellant. On appeal, appellants assert that the trial court abused its discretion in denying leave to file a trial amendment and also allege error in: (1) the submission and refusing to submit certain special issues, and (2) the exclusion of certain evidence. We affirm.

Central Power and Light Company (CP & L) owned and maintained an overhead electrical distribution system in Cove Harbor, a marine industrial installation owned by Aransas County Navigation District No. 1. The waterfront dock and wharf areas are leased to private individuals and companies, and in November, 1978, the major activity of such individuals and companies was related to off-shore exploration and production of petroleum products. Lynn Wendell, husband and father of the plaintiffs, was a part owner and general manager of Lynn Wendell Marine Service, Inc., the third-party defendant, a lessee at Cove Harbor.

The Navigation District provided at Cove Harbor on Lot 43 a boat launching ramp and an adjacent parking area for the use of the public and the lessees. Lot 43 covers approximately 46,604 square feet (1.070 acres).

At the time of his fatal accident, Lynn Wendell, his brother, Bill, and an employee, Kenneth Jackson, were taking a barge out

of the water, intending to position it in the parking area for routine repairs. Lynn Wendell was driving a winch truck to which was attached a trailer. The trailer had been backed down the ramp into the water, the barge positioned above the trailer and attached to the winch truck, then pulled out of the water on the trailer.

CP & L's poles supporting its overhead power lines were located in the right-of-way bordering Lot 43. There were wooden poles with cross arms on which distribution lines were laid at a height of approximately 32 feet above ground. Rising from both sides of the barge at a point approximately 15 feet to the rear of the barge were metal spud poles, which were approximately 28 feet in length. With the barge on the trailer, the spud poles were approximately 4 feet off the ground; thus, the metal spud poles stood approximately 32 feet above the surface level.

On November 27, 1978, after the barge and trailer had been removed from the water and moved part of the way into the parking area, Lynn Wendell stopped the tow truck. After determining that insufficient space was available for access by others to the boat ramp, it was decided to go further southwest from the ramp. There was misting rain, and Lynn was using Bill as a spotter in order to determine the point at which he would stop. Lynn drove the winch truck forward and stopped the truck so that the barge was at the point where Bill was standing. Smoke was seen coming from the tires of the trailer. Both Bill and Jackson, who was on the barge, testified that Jackson lowered a pail of water to Bill who then threw the water on the tires. Bill was knocked to the ground, apparently by electrical shock. Jackson testified that he jumped on a piece of canvas in order to try to insulate himself from the deck of the barge.

As Bill was thrown to the ground, Jackson looked toward Lynn and saw that Lynn was lying on the ground to the left of the left door of the winch truck.

The contact with the overhead power line occurred at a point 36.5 feet northeast of the westernmost pole and at an elevation above the surface of 32.8 feet. The wire made contact with the spud pole at a point approximately 2 inches from the top of the spud pole.

The drawings admitted during the trial were many and varied, and the witnesses' comments with regard to them were not always specific with regard to which exhibit was being discussed. However, from the entire record we have reconstructed a fairly accurate depiction of the relevant scene, as follows:

Lynn was pronounced dead. His surviving spouse and daughters brought suit against CP & L for wrongful death. Illinois Employers' Insurance of Wausau, the workers' compensation carrier for Lynn Wendell Marine Service, Inc., filed a Petition in Intervention. CP & L filed a third-party action against Lynn Wendell Marine Service, Inc.

The suit by appellants against appellee alleged that appellee had failed to:

1. inspect, make appraisals and survey transmission lines for unsafe condition;

2. place power lines at a higher elevation;

3. place the power lines underground;

4. place the power lines on the opposite side of the street; and

5. erect warning signs.

Appellants also alleged liability under the doctrine of res ipsa loquitur.

Appellee filed a general denial, and alleged that Wendell was negligent in:

1. Failing to keep a proper lookout.

2. Coming into contact with the power line.

3. Moving the barge under the power line.

4. Failing to lower the spud poles of the barge before moving it.

5. Failing to notify appellee about moving the barge under the power lines as required by TEX.REV.CIV.STAT.ANN. art. 1436c (Vernon 1980).

During the course of the trial, evidence was introduced that the power line extended 8½ inches over into the parking lot where the accident occurred. Appellants complained that there had been a "taking without due process," and on the fourth day of the trial, appellants orally offered a trial amendment that interjected a new issue, that is, that the encroachment of the power lines into lot 43 was negligence and a proximate cause of the accident. Leave to file was denied by the trial court. The following day, appellants offered a written trial amendment. Without asking appellee to respond, the trial court again denied leave to file. Appellants' counsel again made reference to this trial amendment when the objections to the charge were being made.

The trial court submitted the case to the jury on the acts of negligence that were raised by appellants' pleading and also instructed the jury on standard definitions of ordinary care, negligence, and proximate cause.

The jury answered all the liability issues adversely to the plaintiffs and to the third-party defendant. Specifically the jury answered Special Issues No. 1, 3, 5, and 7 as follows:

### SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that Central Power and Light was negligent in failing to place its distribution line under ground?

Answer "We do" or "We do not."

We, the jury, answer We do not.

### SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that Central Power and Light's failure to erect and maintain the distribution line on the opposite side of the street at the location in question was negligence?

Answer "We do" or "We do not."

We, the Jury, answer: We do not.

### SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that Central Power and Light's failure to place the electrical distribution line at a higher elevation in the area in question was negligence?

Answer "We do" or "We do not."

We, the Jury, answer: We do not.

### SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that Central Power and Light's failure to erect and maintain warning signs as to the location and existence of the line, its voltage, and its height above ground in the area in question was negligence?

Answer "We do" or "We do not."

We, the Jury, answer: We do not.[1]

The jury also found that Lynn Wendell had failed to keep a proper lookout, that he was negligent in failing to lower the spud poles on the barge prior to moving it, and that these acts were a proximate cause of the accident. The jury also found damages to plaintiffs of $3,503,300.00.

Judgment was entered that plaintiffs take nothing. From that judgment, Yvonne Wendell, Marcella Wendell, Gwendolynne Wendell and Barbara Wendell, joined by third-party defendant, Lynn Wendell Marine Service, Inc., brought this appeal.

1. The plaintiffs did not request that the court submit special issues inquiring whether CP & L's alleged failure to inspect, make appraisals and survey the power line was negligence and a proximate cause of the accident.

### Trial Amendment

Appellants, by their first point of error, allege that the trial court erred in denying leave of court to file their trial amendment and in refusing to submit related special issues.[2] Appellant asserts that the issues were tried by consent and that a trial amendment should have been allowed to conform the pleadings to the proof under TEX.R.CIV.P. 66, 67.

The trial amendment and special issues in question were as follows:

### Plaintiffs' Trial Amendment

1. Plaintiffs allege that CP & L owned and maintained the distribution line which came into contact with the spud pole in question, in and over Lot 43 of the area in question, and that constitutes negligence.

### Plaintiffs' Requested Special Issues
### SPECIAL ISSUE NO.

Do you find from a preponderance of the evidence that the distribution line which came into contact with the spud pole was owned and maintained by the Utility Company in and over lot 43 of the area in question?

Answer: "We do" or "We do not."[3]

We, the Jury, answer: _____

If you have answered Issue No. _____ "We do", then answer Issue No. _____; otherwise do not answer Issue No. _____.

### SPECIAL ISSUE NO.

Do you find from a preponderance of the evidence that erecting and maintaining the distribution lines in question over the rigging area constituted negligence?

Answer: "We do" or "We do not."

We, the Jury, answer: _____

### SPECIAL ISSUE NO.

Do you find from a preponderance of the evidence that such negligence was a proximate cause of the death of Lynn Wendell?

Answer: "We do" or "We do not."

We, the Jury, answer: _____

### PLAINTIFF'S SPECIAL ISSUE NO.

Do you find from a preponderance of the evidence that Central Power and Light Company intended to install the high voltage wire in question over Lot 43?

It did so intend _____-
_____

It did not so intend _____-
_____

As we have previously mentioned, in their live pleadings, appellants had alleged that appellee was negligent because they failed to make proper inspections, appraisals and surveys for unsafe conditions and because the power lines were: (1) too low, (2) above ground rather than underground, (3) should have been located on the opposite side of the street, and (4) because they failed to erect warning signs. The trial amendment alleged another act of negligence, that is, that appellee was negligent in allowing the power lines to overhang the parking lot by some 8½ inches.

Amendments to the pleadings during trial are permitted under TEX.R.CIV.P. 66, 67.

**RULE 66. Trial Amendment**

If evidence is objected to at the trial on the ground that it is not within the issues made by the pleading, or if during the trial any defect, fault or omission in a

---

2. Appellants' first point of error reads as follows:

It was error for the trial court to refuse to submit Plaintiff's Trial Amendment, to-wit ... and to refuse to submit plaintiffs' requested special issues *in connection with such Trial Amendment.* (emphasis added.) Nowhere does appellant assert that it was error for the trial court to fail to submit pleaded issues.

Not in the trial court, nor in their brief. To completely remake appellants' point of error as Justice Utter has done is unwarranted.

3. This issue inquired about an uncontroverted fact. CP & L did not deny ownership and maintenance of the power line nor that it hung over lot 43 in the area in question.

pleading, either of form or substance, is called to the attention of the court, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits. The court may grant a postponement to enable the objecting party to meet such evidence.

RULE 67. Amendments to Conform to Issues Tried Without Objection

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. In such case such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made by leave of court upon motion of any party at any time up to the submission of the case to the Court or jury, but failure so to amend shall not affect the result of the trial of these issues; provided that written pleadings, before the time of submission, shall be necessary to the submission of special issues, as is provided in Rules 277 and 279.[4]

■ A trial amendment may be filed only by leave of court, and the request for leave is addressed to the trial court's discretion; the trial court's ruling is reviewable only on a showing of abuse of discretion. *Victory v. State*, 138 Tex. 285, 158 S.W.2d 760, 763 (1942); 2 R. McDonald, Texas Civil Practice in District and County Courts § 8.07 (rev. 1982).

As stated in *Keelin v. Hamilton*, 430 S.W.2d 268, 272 (Tex.Civ.App.—Dallas 1968, no writ):

It is universally recognized that Rule # 66, T.R.C.P., which expressly authorizes trial amendments to pleadings, is to be liberally construed in favor of justice.

(citations omitted) However, the law vests in the trial court sound judicial discretion with regard to trial amendments and something more than a request and a refusal must appear before a reviewing court may properly say that the trial court abused its discretion. The action of the trial court is presumed correct and is subject to review only on a showing of an abuse of discretion.

McDonald, in § 8.07 quotes *Lightner v. McCord*, 151 S.W.2d 362, 367 (Tex.Civ.App. —Amarillo, 1941, no writ), which lists some of the factors which affect the exercise of the trial court's discretion as follows:

In the matter of allowing amendment ... pending the trial in order to meet the proof, the trial judge should allow the amendment if it appears that the new matter contained in it was not known to the party seeking to file the same or, by the exercise of reasonable diligence, he could have ascertained the same when his former pleadings were filed, and that it does not involve new issues or inject into the case new matters which would interfere with the orderly progress of the court's docket or work injustice upon other parties ... However, ... when it appears that the new matter was known to the party seeking to file the amendment, or to his counsel, or, by exercising reasonable diligence, it could have been known ... at such time as would have enabled them to include it in his former pleadings, or if it injects new matter ... the request should be denied.

Appellants assert that the issue of appellee's negligence due to the encroachment of the power line over the parking lot was tried by consent because of the many references to the location of the power lines in the record that came in without objection. *This does not amount to trial by consent since that evidence was relevant to issues raised by the pleadings. Watts v. Watts*, 563 S.W.2d 314, 316 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.).

---

4. There was no express consent to try the unpleaded issue so our inquiry is whether the *issue* of CP & L's alleged negligence due to the encroachment of the power line into Lot 43 was tried by implied consent.

The mere introduction of testimony on an issue does not preclude one's opponent from complaining of the submission of an issue on the matter, and failure to object to that testimony is not fatal to a subsequent effort to prevent submission of issues supported by that testimony to the jury. As stated by our Supreme Court in *Harkey v. Texas Employers' Insurance Association*, 146 Tex. 504, 208 S.W.2d 919 (1948):

> Certainly issues are not *tried* merely by the hearing of the testimony thereon; submission to the jury undoubtedly is part of the process. So although the complaining party does not object to the testimony on the issues but does object to their submission on some tenable ground, he cannot be regarded as impliedly consenting that they be tried when not raised by the pleadings, as contemplated by Rule 67.

208 S.W.2d at 922.

Granted, in the instant case, counsel for the appellee did not object to filing of the trial amendment. However, there was no opportunity to object. The trial court denied the trial amendment without giving appellee's attorney an opportunity to object, and the trial court likewise denied appellants' requested issues on this matter.

As stated by the court in *Jay Fikes and Associates v. Walton*, 578 S.W.2d 885 (Tex. Civ.App.—Amarillo 1979, writ ref'd n.r.e.):

> That rule [Tex.R.Civ.P. 67] does sanction an unpleaded issue to be treated as raised in the pleadings when it is tried by express or implied consent; but, the rule is intended to cover the exceptional case where it clearly appears from the record as a whole that the parties tried the unpleaded issue. It is not intended to establish a general rule of practice and should be applied with care, and in no event in a doubtful situation.

578 S.W.2d at 889. In *Jay Fikes*, a bench trial, there was a stipulation that if the court decided to assess attorney's fees, it would be at its discretion to determine the amount and that testimony concerning the value of the fees would not be necessary. The court wrote:

> "If it be arguable that the stipulation constitutes the hearing of some evidence on the issue of attorney's fees, the introduction of evidence alone does not mean the parties consented to a trial of the unpleaded issue; there must be more."

*Id.* (citing *Harkey* ).

There are many reasons why the doctrine of trial by consent, as an exception to the general rule, should be given a narrow application. In *Harkey*, the Supreme Court pointed out that a defendant is under no obligation to object to testimony that defeats his opponent's claim, even though that very testimony raises an unplead issue on an alternative ground of recovery. 208 S.W.2d at 923. Furthermore, as we stated earlier, it may be that the testimony is relevant to an issue pleaded as well as one not pleaded. Under such circumstances, the doctrine should not be applied unless clearly warranted. *Watts v. Watts*, 563 S.W.2d 314, 316 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.). In the case at bar, the evidence of the power line encroaching on the parking lot was relevant on the other allegations of negligence that had been pleaded by appellants.

In determining whether the issue was tried by consent, we must examine the record not for evidence of the issue, but rather for evidence of *trial* of the issue. *See Watts v. St. Mary's Hall, Inc.*, 662 S.W.2d 55, 58 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). "The doctrine of implied consent applies only where it appears from the record that the issue was actually tried, although not pleaded." *Watts v. Watts*, 563 S.W.2d 314, 316 (Tex. Civ.App.—Dallas 1978, writ ref'd n.r.e.).

Upon examining the entire record, it does not clearly appear that the parties tried the unpleaded issue. Because the issue was not tried by consent, TEX.R. CIV.P. 67 has no application, and the instant appeal is governed by TEX.R.CIV.P. 63 and 66.

In reviewing the action of a trial judge in refusing an amendment under TEX.R.CIV.P. 63, the Supreme Court has specifically held that the burden of showing an abuse of discretion is on the complaining party, rather than on the opposite party to show surprise. *Hardin v. Hardin,* 597 S.W.2d 347, 349 (Tex.1980). *See Valdez v. Lyman-Roberts Hospital, Inc.,* 638 S.W.2d 111, 117 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). Our Court has applied that same test to TEX.R.CIV.P. 66. *Hartford Accident & Indemnity Co. v. Thurmond,* 527 S.W.2d 180, 191 (Tex. Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.) (trial court granting plaintiff's amendment held no abuse of discretion); *see also Garcia v. Caletka,* 486 S.W.2d 880, 882 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.) (granting defendant's amendment no abuse of discretion).

Our Court has previously established what we believe to be the proper test:

Though Rules 63 and 66, T.R.C.P., which deal with pleading amendments should be liberally construed in the interest of justice, it is well established that the action of the trial court in granting or refusing the right to amend the pleadings within the seven-day period preceding trial is a matter within the discretion of the trial judge, and his decision will not be disturbed by an appellate court unless there is a clear showing of an abuse of discretion. The burden is on the complaining party to show that the trial court's action in granting or denying leave to file the amended pleading within the seven-day period before trial was either arbitrary or unjustified by the rules. Something more than a request and a refusal must appear in the record before an appellate court may properly say that a trial court abused its discretion or acted arbitrarily.

In this connection, where it appears that the new matter was known to the parties seeking to file the amendment, or to their counsel, or by exercising reasonable diligence, it could have been known at such time as would have enabled them to include it in their former pleadings, or if it injects new matter, the request should be denied. [Citations omitted.] *Plata v. Guzman,* 571 S.W.2d 408, 411 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

Applying that test to the instant controversy, we first note that nothing more than a request and a refusal appears in the record before us. In *State v. Gilbreth,* 511 S.W.2d 556, 560 (Tex.Civ.App.—Austin 1974, writ ref'd), the court suggested that a showing could have been made by bill of exception, or other appropriate means, and then held: "In the absence of showing of the facts attending the presentation of the State's motion and action of the trial court in refusing to allow the amendment, this Court will presume that the trial court did not abuse its discretion." When confronted with a silent record, this Court will presume that the trial court did not abuse its discretion.

Notwithstanding *Gilbreth,* we also are of the opinion that appellant has failed to meet the other criteria set forth by our Court in *Plata v. Guzman.* By exercising reasonable diligence, the matter sought to be added by trial amendment could have been included before this cause was tried. The evidence could clearly have been discovered by appellants well in advance of trial, for it came from their own expert.

For all of these reasons, appellants have failed to show an abuse of discretion. Appellants' first point of error is overruled.

### Standard of Care

Appellants, by their fifth point of error, complain that the trial court erred in refusing to submit the following requested instruction:

A company maintaining electrical wires over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have the right to go, either for work, business, or pleasure, to prevent injury.

The trial court denied the requested instruction and instead gave the standard instructions on ordinary care and negligence. Through their proposed instruction, appellants are attempting to impose a higher duty of care on appellee than ordinary care.

The Texas Commission of Appeals, in an opinion from which the language of the requested instruction is drawn, said:

[T]he duty is imposed, in a case like this, not only to warn, but to use at least ordinary care to have the premises in a reasonably safe condition; *the degree of care required must be commensurate with the danger.* (emphasis added.)

\* \* \* \* \* \*

A company maintaining electrical wires over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have the right to go, either for work, business, or pleasure, to prevent injury.

*West Texas Utilities v. Renner*, 53 S.W.2d 451, 453, 454 (Tex.Comm'n App.1932, holding approved). However, this "commensurate with the danger" standard does not impose a higher duty of care, it merely more fully defines what is ordinary care under the facts presented. In fact, the Court in *Renner*, set forth that:

[T]he meaning of the common-law rule of ordinary care is elastic enough to meet all emergencies; the amount of care depends upon the exigency confronted. It may require one thing to be done at one place, and something else at another place; the degree of care must be such as a person of ordinary prudence would exercise under like circumstances.

*Id.* at 453–454.

We believe that the concept of ordinary care is sufficient in this case and the instruction was properly denied. Appellant's fifth point of error is overruled.

Appellants, by their sixth point of error, complain that the trial court erred in restricting the cross-examination of appellee's expert witness. Appellants' attorney attempted to cross-examine appellee's employee, Walter Mosely, regarding the standards embodied in the National Electric Code.

If a book is recognized as authoritative by a witness or is relied on by an expert witness in forming his opinion, he may be cross-examined based on the reading of excerpts from that book. *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779 (1949); *National Surety Corp. v. Rushing*, 628 S.W.2d 90 (Tex.App.—Beaumont 1981, no writ). Mosely indicated that his opinion as to the safety of the installation was based in part on the authority in question. Therefore, it would be error for the trial court to preclude a cross-examination of Mosely based on this Code; however, on the bill of exceptions, no relevant testimony was preserved. In the absence of testimony, showing that lot 43 was regularly used or was suitable for use as a sailboat rigging area, the provisions of the code regarding areas designed for rigging and launching of sailboats is not relevant and was therefore properly excluded. *See Pittman v. Baladez*, 158 Tex. 372, 312 S.W.2d 210 (1958). Appellants' sixth point of error is overruled.

Appellants in their second, third, fourth and seventh points of error raise issues relating to Lynn Wendell's negligence. We have reviewed these points of error, and they are overruled.

The judgment of the trial court is AFFIRMED.

UTTER and KENNEDY, JJ., dissent.

NYE, C.J., and BISSETT, J., not participating.

UTTER, Justice, dissenting.

I respectfully dissent. I join with Justice Kennedy in his conclusion that the trial court abused its discretion in refusing to allow appellant's trial amendment. I agree with his conclusion because in my opinion the trial amendment merely amplified or

clarified the pleading upon which appellants went to trial.

In their Third Amended Original Petition, their live pleading at trial, appellants alleged that appellee was negligent due to:

1. *The failure of THE UTILITY COMPANY to make* proper inspections, appraisals and *surveys of their transmission lines* in the area in question, for unsafe conditions of a nature which were the proximate cause of the death of Lynn Wendell. (Emphasis added.)

Appellee neither objected nor excepted to these pleadings. In the absence of special exceptions, courts will liberally construe pleadings in favor of the pleader. *Roark v. Allen*, 633 S.W.2d 804 (Tex.1982); *J.M. Hollis Construction Co., Inc. v. Paul Durham Co.*, 641 S.W.2d 354 (Tex.App.—Corpus Christi 1982, no writ).

"It is a general rule, so well established as to need no citation of authority, that the petition will be construed as favorably as possible for the pleader. The Court will look to the pleader's intendment and the pleading will be upheld even if some element of a cause of action has not be specifically alleged. Every fact will be supplied that can reasonably be inferred from what is specifically stated." *Gulf, Colorado & Santa Fe Railway Co. v. Bliss*, 368 S.W.2d 594 (Tex.1963).

In their trial pleading, appellants alleged the failure of CP & L *to make proper surveys* of the distribution lines in the area in question for unsafe conditions of a nature which were the proximate cause of the death of Lynn Wendell.

During the course of the trial, appellants offered the trial amendment in question which set forth:

1. Plaintiffs allege that CP & L owned and maintained the distribution line which came into contact with the spud pole in question, in and over lot 43 of the area in question, and that such constitutes negligence.

As reflected in the record, the trial court sua sponte denied appellant's request for the trial amendment. Appellant was given no opportunity to explain the basis for the requested trial amendment, and appellee was given no opportunity to respond to the request.

In accordance with the commonly understood definition of the term "to survey," the specific allegation in the trial amendment in question was that appellee failed to make proper surveys of its distribution lines. The obvious import of said allegation was that, if appellee had properly surveyed said lines, it would have discovered that the distribution lines were not confined to the right-of-way but extended eight and one-half inches over Lot 43, posing a potentially unsafe condition, which was the proximate cause of the death of Lynn Wendell. It is my opinion that the trial amendment should have been allowed to allow the pleadings to conform with the evidence which had been previously introduced.

However, I am further of the opinion that the allowance of the trial amendment was not necessary to support the submission of appellants requested issues which is the primary basis of appellant's complaint. Mr. Keller testified without objection that, if the distribution line had been outside Lot 43, the accident would not have happened. Thus, we have the trial pleadings which support the independent introduction of such evidence and, therefore, it follows that there is sufficient evidence to support the submission of the requested issues.

At the close of the presentation of testimony, appellant requested the following special issues:

### SPECIAL ISSUE NO.

Do you find from a preponderance of the evidence that the distribution line which came into contact with the spud pole was owned and maintained by the Utility Company in and over lot 43 of the area in question?

Answer: "We do" or "We do not."

We, the Jury, answer: _____

If you have answered Issue No. _____ "We do", then answer Issue No. _____; otherwise do not answer Issue No. _____,

### SPECIAL ISSUE NO.

Do you find from a preponderance of the evidence that erecting and maintaining the distribution lines in question over the rigging area constituted negligence?

Answer: "We do" or "We do not."

We, the Jury, answer: _____

### SPECIAL ISSUE NO.

Do you find from a preponderance of the evidence that such negligence was a proximate cause of the death of Lynn Wendell?

Answer: "We do" or "We do not."

We, the Jury, answer: _____

### PLAINTIFF'S SPECIAL ISSUE NO.

Do you find from a preponderance of the evidence that Central Power and Light Company intended to install the high voltage wire in question over Lot 43?

It did so intend _____-_____

It did not so intend _____-_____

The majority opinion makes note of the fact that appellants' first point of error reads as follows:

It is error for the trial court to refuse to submit plaintiffs' trial amendment, to wit ... and to refuse to submit plaintiffs' requested special issues *in connection with such trial amendment.* (Emphasis added [by the majority].)

The majority would have us view restrictively appellants' first point of error as regarding only the requested special issues as they relate to the issue raised in the trial amendment, which issue, as the majority contends, was not sufficiently raised by the appellants' trial pleading. However, since briefing rules are to be liberally construed in an effort to ascertain an appellant's real basis for appeal, TEX.R.CIV.P. 418 and 422, *In re Marriage of Greer,* 483 S.W.2d 490 (Tex.Civ.App.—Amarillo 1972, writ dism'd), we need not restrictively view appellants' first point of error as the majority does. The first requested special issue regards an uncontroverted fact issue and need not have been submitted, *Texas Employers' Insurance Association v. Miller,* 596 S.W.2d 621 (Tex.Civ.App.—Waco 1980, no writ). All of appellants' requested special issues, in my opinion, relate to a pleaded issue, to wit, *"The failure of THE UTILITY COMPANY to make proper inspections, appraisals and surveys of their transmission lines in the area in question, for unsafe conditions of a nature which were the proximate cause of the death of Lynn Wendell."* (Emphasis added.) The reasonable intendment of the above-quoted pleaded issue in the trial pleading was that apellee CP & L was negligent in failing to survey its distribution lines, and that, if appellee had made proper surveys of said lines, it would have discovered that the lines were not confined to the right-of-way but extended eight and one-half inches over Lot 43, posing a potentially unsafe condition, which proximately caused the death of Lynn Wendell. Said pleaded issue pervaded the entire trial and was an issue controlling the disposition of the case.

TEX.R.CIV.P. 277 provides in part:

In all jury cases the court may submit said cause upon special issues without request of either party, and, upon request of either party, *shall submit the cause upon special issues controlling the disposition of the case that are raised by the written pleadings and the evidence in the case,* except that, for good cause subject to review or on agreement of the parties, the court may submit the same on a general charge. (Emphasis added.)

TEX.R.CIV.P. 279 provides in part:

When the court submits a case upon special issues, he *shall submit the controlling issues made by the written plead-*

*ings and the evidence.* (Emphasis added.)

Under TEX.R.CIV.P. 277 and 279, when the court submits a cause of action upon special issues, it *shall submit the cause upon special issues controlling the disposition of the case that are raised by the written pleadings and the evidence in the case;* and, failure to do so, under such circumstances, is reversible error. *Chrysler Corporation v. McMorries,* 657 S.W.2d 858 (Tex.App.—Amarillo 1983, no writ); *First State Bank, Morton v. Chesshir,* 634 S.W.2d 742 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.). The trial court only has discretion in the manner in which the required special issues are submitted. *See* TEX.R. CIV.P. 277 and 279; *Braugh v. Phillips,* 557 S.W.2d 155 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.).

In my opinion and in accordance with liberal construction of the trial pleading and related points of error and in view of the testimony set forth in the majority opinion and Justice Kennedy's dissent, the trial pleading and testimony were sufficient to support the submission of appellants' requested special issues. Furthermore, since the trial pleading and testimony sufficiently supported the requested special issues, the trial court was mandatorily required under TEX.R.CIV.P. 277 and 279 and the above case authority to submit the requested special issues which involved controverted fact issues. The trial court erred in refusing the requested special issues. I would sustain appellants' first point of error.

KENNEDY, Justice, dissenting.

I respectfully dissent. For the reasons hereinafter stated, I am of the opinion that the trial amendment should have been allowed and that the jury should have been allowed to answer appellant's requested special issues concerning such trial amendment. I would reverse and remand.

Appellants, by their first point of error, complain of the trial court's refusal to permit a trial amendment and the submission of related special issues. Appellant asserts that the issues were tried by consent and that a trial amendment should have been allowed to conform the pleadings to the proof under TEX.R.CIV.P. 66, 67. The majority opinion holds that the issues were not tried by consent. The trial amendment and special issues are set out in the majority opinion.

Trial amendments were offered on three occasions by the appellants. On all three occasions, the amendment was denied by the trial court *before objection from the appellee.* Amendments to the pleadings during trial are permitted under TEX.R. CIV.P. 66, 67.

"The application of Rules 66 and 67 is within the sound discretion of the trial court. Nevertheless, that discretion is to be exercised liberally in favor of justice." *Putter v. Anderson,* 601 S.W.2d 73, 76 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r. e.). However, the difference between Rules 63 and 66 [1] and Rule 67 is apparent from the study of *Johns-Manville Sales Corp. v. R.J. Reagan Co., Inc.,* 577 S.W.2d 341 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.). The appellant in that case submitted amended pleadings four days before the trial was set, and the Waco court held that it was not an abuse of discretion to refuse the new pleadings as untimely when appellee asserted "surprise." However, appellant introduced evidence on the issues asserted in the refused pleading and it was held to be an abuse of discretion to refuse the trial amendment embodying substantially the same allegations as the previous-

1. Essentially the same standard is applied for Rules 63 and 66. Under Rule 63, "The burden of convincing the trial court that the late filing of an amended pleading will operate as a surprise rests on the one resisting the filing of the pleading, as does the burden of showing prejudice in the case of a trial amendment offered under Rule 66." *Herrin Transportation Co., Inc.*

*v. Parker,* 425 S.W.2d 876 (Tex.Civ.App.—Houston [1st Dist.] 1968 writ ref'd n.r.e.). The courts have not always made it clear which rule was under discussion. *See e.g. Sanchez v. Matthews,* 636 S.W.2d 455 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.); *Plata v. Guzman,* 571 S.W.2d 408 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

ly refused pleading. Under Rule 66, a trial amendment should be allowed in the absence of a showing of surprise or prejudice by the opposite party. *Inesco, Inc. v. Sears,* 567 S.W.2d 827 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.); *Home Indemnity Co. v. Draper,* 504 S.W.2d 570 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.). However, I do not believe that appellant has met his burden to show a clear abuse of discretion by the trial court under Rule 66. *Durham v. Uvalde Rock Asphalt Co.,* 599 S.W.2d 866 (Tex. Civ.App.—San Antonio 1980, no writ). *See Hardin v. Hardin,* 597 S.W.2d 347 (Tex. 1980) (interpreting Rule 63 to say that the burden is on the complaining party to show abuse of discretion, not on opposite party to show surprise). It is clear, therefore, that the standard for applying Rule 67 differs from Rules 63 and 66.

In a survey of recent cases decided under Rule 67, I find that in no case has the granting of a trial amendment to conform the pleadings to the evidence been found to be an abuse of discretion. In two cases [2] it has been held that the granting of the amendment was not an abuse of discretion. When the amendment was denied, I found six cases where it was held that the trial court abused his discretion,[3] and five wherein he did not.[4]

I believe that a trial amendment to conform the pleadings to the evidence so as to permit submission of jury issues should be allowed when the issues have been tried by consent and there is no extraordinary delay in submitting the amendment or other unusual circumstances. It, therefore, must be considered what comprises trial by consent and whether it occurred in this case.

"Trial by consent" has apparently never been defined. In order to properly define this term, one should look at the circumstances under which it was adopted and how it has been used.

When the Texas Rules of Civil Procedure were adopted, effective September 1, 1941, Rule 67 was in its current form. It was adopted by the Supreme Court, against the background of such cases as *Denison v. League,* 16 Tex. 399 (1856); *Mims v. Mitchell,* 1 Tex. 443 (1846); and *McKinney v. Bradbury,* Dallam 441 (1841). "The party making an averment must show that the allegata and the probata must correspond." *McKinney at 443.* "*The allegata must be broad enough to let in the proof, and that no evidence, not supported by the allegata, can sustain a verdict.*" Denison v. League *at 409.*

Although the rule that the proof must conform to the pleadings prevented sur-

---

**2.** *Schrader v. Artco Bell Corp.,* 579 S.W.2d 534 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.) (with trial by consent no change to date in pleading unless prejudice); *Santa Rosa Medical Center v. Robinson,* 560 S.W.2d 751 (Tex.Civ. App.—San Antonio 1977, no writ) (no abuse to grant in absences of objection, surprise request for postponement or continuance).

**3.** *Gulf, Colorado & Santa Fe Rwy. Co. v. Bliss,* 368 S.W.2d 594, 597 (Tex.1963) (no valid objection to defendant's amendment after plaintiff given leave to file); *Sanchez v. Matthews,* 636 S.W.2d 455 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.) (party was entitled to prejudgment interest); *Cuellar v. Garcia,* 621 S.W.2d 646 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.) (abuse to deny when, if allowed, would be nothing more than alleging an additional facet of negligence raised by proof). *Putter v. Anderson,* 601 S.W.2d 73 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.) (when appellee proves facts, trial amendment should be allowed); *May v. Missouri-Kansas-Texas R. Co.,* 583 S.W.2d 694 (Tex.Civ.

App.—Waco 1979, writ ref'd n.r.e.) (evidence raised sharply disputed fact issue); *Johns-Manville Sales Corp. v. R. J. Reagan,* 577 S.W.2d 341 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.).

**4.** *Smart v. Tower Land & Inv. Co.,* 635 S.W.2d 615 (Tex.App.—Dallas 1982, writ ref'd n.r.e.) (delay is too great after remand from Supreme Court); *Crozier v. Horne Ch. Trust,* 597 S.W.2d 418 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.) (no trial by consent when opponent objects); *City of Houston v. Riggins,* 568 S.W.2d 188 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.) (fact issue raised after jury verdict not abuse to deny); *Robertson v. Southwestern Bell Telephone Co.,* 403 S.W.2d 459 (Tex.Civ.App.—Tyler 1966, no writ) (appellant not diligent—delay of one year); *Beard Drilling, Inc. v. Steegar,* 361 S.W.2d 888 (Tex.Civ.App.—Houston 1962, affirmed in part, reversed in part [The Supreme Court concurs in cited point, argument and disposition 371 S.W.2d 684]) (refusal not abuse when no harm to appellant—defense asserted in amendment was established as matter of law).

prise and trial by ambush, it also led to harsh results when there is an omission or defect in the pleadings and the pleader has a valid claim or defense. The Texas Rules of Civil Procedure, including Rules 45, 63, 66 and 67 were intended to permit the merits of the case to be reached despite pleading errors. It has been said:

Rule 45, Texas Rules of Civil Procedure, requires a defendant's pleading to consist "of a statement in plain and concise language" of his "grounds of defense," and provides that they shall be so construed as to do substantial justice. "Fair notice" by the allegations as a whole is the test for sufficiency of evidentiary pleading or conclusions excepted to. Rule 67 provides issues not raised by pleading may be tried by implied consent as if pleaded, and provides for amendment to cause pleadings to conform to evidence. Rule 94 requires that any matter "constituting an avoidance or affirmative defense" be "set forth affirmatively." Rules 67, 277 and 279 restrict jury issues to those raised by affirmative written pleadings.

Texas early rejected the English system of pleading and adopted that of the Roman, or civil law as modified by Spanish and Mexican practice. From the Act of 1836, enacted by the first Congress of the Republic, through the Practice Act of 1846 and to the adoption of the present Rules, the general design and policy of the Texas system of pleading has been to require parties to "set forth in plain and intelligible manner the facts upon which they rely."

*Gunnells Sand Co. v. Wilhite*, 389 S.W.2d 596 (Tex.Civ.App.—Waco 1965, writ ref'd n.r.e.). *See* Stayton, The Scope and Function of Pleading Under the New Federal and Texas Rules, 20 Texas L.Rev. 16 (1941). Under Rule 45, the pleadings are sufficient if they give fair and adequate notice of the *facts* upon which the pleader bases his claim. *Roark v. Allen*, 633 S.W.2d 804 (Tex.1982).

In the same way, Rule 67 is designed to prevent the harsh results of the rule announced in *McKinney, Mims* and *Denison*. If the evidence has been admitted on a controversial issue, the verdict can stand under Rule 67. *Texas Tool Traders, Inc. v. Mosley Machinery Co., Inc.*, 422 S.W.2d 229 (Tex.Civ.App.—Waco 1967, no writ). However, there is a requirement that the special issues submitted to the jury find support in the pleadings. *McFadden v. Hale*, 615 S.W.2d 345 (Tex.Civ.App.—Waco 1981, no writ); *Murray v. Brazzel*, 438 S.W.2d 382 (Tex.Civ.App.—Waco 1969 writ ref'd n.r.e.). Therefore, appellants in our case sought leave of court to amend their pleadings to conform to the evidence admitted.

Upon examination of the cases, we find that trial by consent is comprised of the following elements:

1. Presentation to the court and/or jury, for resolution of an issue of law or fact;[5]

2. of evidence of the relevant facts;[6]

3a. without objection,[7] by a party present at the trial;[8] or

3b. by the opposite party;[9]

4. of an issue not in the pleadings.[10]

It is implicit in this definition that evidence relevant also to an issue raised by the pleadings is not a basis for finding trial by consent. *Watts v. Watts*.

The majority cites *Harkey v. Texas Employer's Insurance Association*, 146 Tex. 504, 208 S.W.2d 919 (1948) for the proposi-

---

5. *See* Black's Law Dictionary 1348 (5th Ed. 1979).

6. *Pruske v. Pruske*, 601 S.W.2d 746 (Tex.Civ.App.—Austin 1980, writ dism'd).

7. *Bednarz v. State*, 142 Tex. 138, 176 S.W.2d 562 (1943); *Crozier v. Horne Children Maintenance and Educational Trust*, 597 S.W.2d 418 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.).

8. *Stoner v. Thompson*, 578 S.W.2d 679 (Tex. 1979).

9. *See Equitable Trust Co. v. Roland*, 644 S.W.2d 46 (Tex.App.—San Antonio 1982, no writ).

10. *Watts v. Watts*, 563 S.W.2d 314 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.).

tion that submission to the jury is a requirement of trial by consent. However, in that case, no trial amendment was requested or denied and that issue was not before the court in *Harkey.* The introduction of *evidence* on the issues of duty, breach and proximate cause regarding the wire overhanging Lot 43, entitles appellants to the amendment of the pleadings. *See e.g., Cuellar v. Garcia,* 621 S.W.2d 646 (Tex.Civ. App.—Austin 1981, writ ref'd n.r.e.). The evidence now supported by the pleadings entitles appellants to the submission of the special issues. *Southwestern Bell Telephone Co. v. Thomas,* 554 S.W.2d 672 (Tex. 1977).

The majority takes the position that evidence concerning the encroachment of the power line was also relevant on matters affirmatively pled by appellants. With this, I must firmly disagree. Appellants' pleadings contain three references to the *location* of the power line, i.e., the height, the fact that it was not underground and the fact that it was not across the street. Nowhere in appellants' pleadings is there a reference to the encroachment of the power line upon Lot 43. Upon examination of the record, I find that there is evidence introduced without objection that the line is located approximately eight inches over Lot 43, evidence of the propriety and safety of that location, evidence of the extent of appellee's duty to ensure a safe location and evidence that the location of the wire was a proximate cause of the death of Mr. Wendell. Specific references to the statement of facts, showing the evidence introduced and proceedings regarding the location of the wire eight inches over the lot line, which is not relevant to any other issue, is shown in an appendix to this opinion, wherein it shows that Mr. Max Keller, a CP & L employee called by appellee, CP & L, on cross-examination by Mr. Crites, testified that the outside line, the one closest to Lot 43, was the one contacted by the spud pole; that there were 8 foot cross arms; that the spud pole barely touched the wire; that there was not sufficient damage to the wire to make a repair; that the contact point as located from his field measure-

ments was inside Lot 43; and that, if the wire had been outside Lot 43, the accident would not have happened.

The fact that the distribution line, owned by CP & L, was over lot 43 at the time of trial is uncontroverted, and, quite clearly, the issue of negligence regarding the location of the wire was tried by consent. Prior to the offer of the amendment near the close of appellant's case, there had been no less than twenty separate references to the fact that the wire was some eight inches over the lot line. At least one-third of the more than 500 pages of testimony and proceedings up to that point were devoted to the location of this line and to the propriety and safety of that location. The first reference to the intrusion over lot 43 is actually in *appellee's* opening statement. The first introduction into evidence of the fact that the wire was some eight inches over the lot line was during *appellee's* cross-examination of appellants' expert witness.

I would, therefore, find that the issues of negligence and proximate cause regarding the fact that the wire was located approximately eight inches over lot 43 was tried by consent. I would further find that it was an abuse of discretion for the trial court to deny the trial amendment, when that amendment would do nothing more than allege an additional facet of negligence, arising out of the same occurrence as previously alleged, which has been raised by the evidence. *Cuellar v. Garcia,* 621 S.W.2d 646 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.).

The trial court's refusal to permit appellants to amend their pleadings to comport with the evidence admitted without objection is error. TEX.R.CIV.P. 67; *Cuellar v. Garcia.* If there is evidence to support the submission of special issues, the court's refusal to submit such issues is reversible error. *Southwestern Bell Telephone Company v. Thomas,* 554 S.W.2d 672 (Tex. 1977).

I would sustain appellants' first point of error.

For the reasons stated above, I would reverse and remand the judgment of the trial court.

## APPENDIX

The following is a summary of the evidence and proceedings relevant to the issues tried by consent and no other issue in the pleadings.

VOL. IV

p. 159     Mr. Griffith testified on cross-examination by appellee that the wire which came in contact with the spud pole could overhang Lot 43 by about a foot.

p. 182     Bill Wendell testified that the wire was bent from its resting position only three or four inches, that the spud pole had barely touched the wire.

p. 184     Mr. Caldwell testified that the wire which came in contact with the spud pole overhung Lot 43 approximately eight inches.

p. 286     Mr. Caldwell testified that he set an instrument on the monument marking the lot line and determined visually that the wire in question was over Lot 43.

p. 315     After being qualified as an expert, Mr. Caldwell testified that the installation would have been safer if the line had been "routed differently so as not to cross over the area ..."

p. 327     On cross, Mr. Caldwell restates the wire was eight inches over Lot 43.

p. 328     Mr. Caldwell states that the wire is eight inches over Lot 43.

p. 335     Mr. Crites, attorney for Lynn Wendell Marine Service, Inc., argued to the court that the power line, being outside the utility easement, was encroaching on Lot 43.

p. 336     Mr. Wray, attorney for defendant/appellee, states to the court that CPL's "right to put these lines where they are depends upon the fact that it's the public right-of-way."

p. 357     Mr. Caldwell again testified that the line was over Lot 43, which is a launching and rigging area.

p. 362     Mr. Caldwell testified that the line was over Lot 43 at the point of contact with the spud pole.

VOL. V

p. 399     Mr. Flanagan testified that the wire in question overhung Lot 43 by about 8½ inches.

p. 400     Mr. Flanagan again testifies that the wire in question is approximately eight inches over Lot 43 and that the safe clearance zone is six feet, eight inches into the parking area.

p. 420     Mr. Flanagan again testifies on cross that the line overhangs Lot 43 by eight inches.

p. 421     Mr. Wray asks if the location of the wire is dependent upon how plumb the pole is and Mr. Flanagan agrees.

p. 422     Mr. Wray asks if a shift in the pole could cause a displacement of the wires. Mr. Flanagan states that it is not possible with the installation in question.

p. 423     Mr. Flanagan testifies that the pole is pretty well in plumb, but that, being a class B pole, it is not the same diameter from top to bottom.

p. 423–424     Mr. Flanagan testifies that the pole has been reguyed since the date of the accident.

p. 425     Mr. Flanagan testified on cross that the photographs introduced into evidence showed that the pole was guyed in a different way at the time of the accident.

p. 474     Mr. Flanagan again states that the line is eight inches over Lot 43.

p. 561–563     Mr. Crites elicits from Mr. Doyle Bryant, an employee of CPL called by Plaintiff as an adverse witness, testimony regarding the location of the poles in question and CPL's standard practice in locating poles "as near as possible to the property line."

p. 564–572     Mr. Crites elicits from Mr. Bryant testimony regarding the location of power poles relative to property lines and that, with 8' cross arms, power lines are often outside easements.

p. 574     Mr. Crites elicits from Mr. Bryant testimony regarding whether CPL obtains easements for wires overhanging private property.

p. 576–579     Mr. Wray elicits from Mr. Bryant testimony regarding obtaining easements for power lines; that the power company has a right granted by statute to put poles along a public right-of-way; that cities grant franchises for power companies; that there is no written easement in Cove Harbor; that the installation at Cove Harbor was based on the right to place poles in the public right-of-way.

p. 579–584    Mr. Wray elicits from Mr. Bryant testimony regarding the location of the poles in question; the length of the cross arm; the location of the lot line; the CPL standard for locating poles as nearly as possible to the property line and whether or not this takes into consideration the cross arm.

p. 584    Mr. Bryant testifies in response to leading questions by Mr. Wray that the navigation district owned Cove Harbor and that there was no objection to or discussion of the location of the poles prior to the accident.

p. 587    Mr. Crites, by leading question, asked Mr. Bryant if there was a franchise governing the placement of poles at Cove Harbor; Mr. Bryant replied "No."

p. 588    The court asked the witness the names of the roads in Cove Harbor; Mr. Bryant responded that he didn't know of any names.

p. 589    Plaintiff/appellant offers a trial amendment alleging CPL maintained the power line over Lot 43, which constitutes negligence. Denied, prior to response by defendant/appellee.

p. 594    Louise Lawhon, employee of Lynn Wendell Marine Service, Inc., testified that she had worked for that company for six months prior to the accident.

p. 594–596    On leading questions by Mr. Wray, Ms. Lawhon testified that she did not know how much shift in vertical alignment would produce an eight inch to one foot shift at 32 or 33 feet high; that she assumed a shift at the base of the pole would produce a larger shift at the top of the pole; that, to her knowledge, there had been no shift in the pole in the three years since Wendell's death, but that she would not know if it had moved; and that she could not say if the wire was over Lot 43 on the day Wendell died.

p. 596–597    On redirect by Mr. Crites, Ms. Lawhon testified that she had no way to determine the location of the line; that she was not an engineer and had no training in that field; that she goes by the pole in question four or five times a day; that in all that time, she has seen no difference in the pole whatsoever.

p. 598    The plaintiff rested.

p. 630    Mr. Max Keller, on cross-examination by Mr. Crites, testified that the outside line, the one closest to Lot 43, was the one contacted by the spud pole; that there were 8 foot cross arms; that the spud pole barely touched the wire; that there was not sufficient damage to the wire to make a repair; that the contact point as located from his field measurements was inside Lot 43; and that, if the wire had been outside Lot 43, the accident would not have happened.

**VOL. VI**

p. 667    Mr. Walter Mosley, District Engineer for CPL, testified on direct that he had never received a complaint about the lines being eight inches out of the street right-of-way over Lot 43.

p. 680–683    On cross, Mr. Crites, by leading questions, elicits from Mr. Mosley testimony that the poles are 45 feet in length with eight foot cross arms, buried seven feet, that the sufficiency of that depth depends upon several factors, including the soil; that the soil appeared sandy; that poles are intended to be perfectly plumb when installed; that a pole can shift six inches to two feet at the top of the pole; that, in sand, the poles generally do not shift; that the probability that the pole shifted was "slim"; that it was probably still in the same place it was set; that the pole was set in 1962 and probably had not shifted.

p. 683    Mr. Mosley further testified that, in residential areas, poles are placed as close as possible to the property line, but clear of the property to allow fences to be built on the property line.

p. 688    Mr. Mosley further testified that the plans, Pl.Ex. Nos. 15 and 17, were CPL's plans; that CPL built the installation; that the pole is set and the installation built according to plans.

p. 689–690    Mr. Mosley further testified that CPL standards require that poles in alleys shall be as near as possible to property line, on the outside of the property line.

p. 690    Mr. Mosley further testified that the pole was a 45' class five pole with an eight-foot cross arm, buried seven feet and that the wires were at approximately 32' above ground.

p. 692–694    Mr. Mosley further testified that the wire would be 49 inches from the center of the pole; that, if this

installation was properly done, there would inevitably be a wire over the property.

p. 696 Mr. Mosley further testified that he was not aware of any agreements with the owners of Cove Harbor regarding the power installation.

p. 817 Plaintiff/appellant re-offers the trial amendment and offers Special Issues regarding the location of the power line over Lot 43 and, following an off-the-record discussion, the court denies both trial amendment and Special Issues.